CITY OF WEST UNIVERSITY PLACE ET AL v. J. R. ELLIS.

No. 7485. Decided January 3, 1940.)
(134 S. W., 2d Series, 1038.)

*Robert L. Sonfield,* of Houston, for plaintiff in error.

It was error for the court to hold the ordinance unreasonable. Munger Oil & Cotton Co. v. City of Groesbeck, 194 S. W. 1121; Houston & T. C. Ry. Co. v. City of Dallas, 98 Texas 396, 84 S. W. 648; Milliken v. City of Weatherford, 54 Texas 388.

*W. P. Hamblen, W. P. Hamblen, Jr.,* and *Orrin H. Bonney,* all of Houston, for defendant in error.

The governmental power to interfere by zoning regulations with the general rights of landowners by restricting the character of the use of his property is not unlimited, except when the character of the property is such that to limit its use to residential property when it is in a natural business center and to prevent its use for business purpose would be to practically destroy its value. Lombardo v. City of Dallas, 124 Texas 1, 73 S. W. (2d) 475; McEachern v. The Town of Highland Park, 124 Texas 36, 73 S. W. (2d) 487.

MR. JUDGE GERMAN delivered the opinion of the Commission of Appeals, Section A.

In this case the City of West University Place will be designated plaintiff and J. R. Ellis will be called defendant.

The City of West University Place is incorporated under the general laws of the State of Texas, and has some 8000 population. Under its charter and the laws of the State it has the power to enact a comprehensive zoning ordinance. It adopted such an ordinance on June 11, 1937. Just when such ordinance became effective is in doubt, but that question need not be determined here.

The ordinance in question divided the city into "Single-Family Dwelling Districts" and "Retail Business Districts." Defendant owns Lot 4A in Block 44, having acquired same prior to the adoption of the zoning ordinance. Said lot is located in the extreme southwest portion of what was designated as a Single-Family Dwelling District. It faces south on University Boulevard, which is the main street or thoroughfare through said city. Said lot appears to be about fifty feet in width east and west, and has that frontage on said boulevard. It is about 150 feet in length north and south. Prior to the date of the zoning ordinance there was a business district or "community center" in the city. This community center lies immediately west of defendant's lot and between that lot and the grounds of West University School. The west line of Lot 4A constitutes the east line of the block upon which the business houses are located. According to the maps the property line is the division line between the business district and the dwelling district, as created by the zoning ordinance. There is a drainage ditch some ten or twelve feet wide along this property line, but it is not clear whether it is partly on Lot 4A or entirely on the business block. Upon the business block west of Lot 4A there are six business houses, all of which appear to adjoin, and all of which face on University Boulevard. Immediately west of defendant's lot, coming up to the west edge of the

drainage ditch, is a two-story business house, used as a drug store and as a liquor store. Just east of defendant's lot, on Lot 4B, which is also about fifty feet in width, is a brick or brick-veneer building, originally built for a residence, but now used as a beauty parlor, and which was so used at the time of the enactment of the zoning ordinance.

This suit was brought by plaintiff to obtain an injunction restraining defendant from constructing a business house on his said lot, on the ground that such building would be in contravention of the zoning ordinance, under which said lot had been classified as residence property. Defendant, while admitting the validity of the zoning ordinance in its general features, asserted that same was invalid as to his particular lot, for the reason that same, when applied thereto, was unreasonable, oppressive and arbitrary, in that his lot was suitable and valuable only as business property, and was of but little, if any, value as residential property; and, further, because at the time of the enactment of the zoning ordinance said lot was naturally, and in fact, within the de facto business portion of said city.

The trial court, after a full hearing, denied the city any relief, and this action was upheld by the Court of Civil Appeals. 118 S. W. (2d) 907. Because of the public nature of the case it was advanced for hearing here.

■ The Court of Civil Appeals appears to have placed its decision upon the ground "that appellee's proof must be taken to have established, as a matter of fact, that his lot was in the de facto business area of the community at the time the ordinance was adopted, and consequently the restricting of such property to residential purposes, for which it was not suited, was, as to said property, unreasonable, discriminatory and arbitrary." The trial court filed no findings of fact and conclusions of law, and if its judgment may be sustained upon any reasonable theory supported by the law and the fact, it should be upheld.

■ As presented in assignments of error, plaintiff's contentions in this court may be reduced in substance to two:

First. That the legislature of the State has given to cities such as the City of West University Place express authority to create zoning districts and restrict businesses to a particular locality, and therefore the reasonableness of the zoning ordinance as to any particular piece of property cannot be judicially inquired into. In this contention, plaintiff is in error in two particulars:

(a) The ordinance in question is one passed under a general power, and not one where the mode of the exercise of power is specific, and consequently is subject to the test of reasonableness. Houston & T. C. Ry. Co. v. City of Dallas, 98 Texas 396, 84 S. W. 648; Crossman v. Galveston, 112 Texas 303, 247 S. W. 810.

(b) But if otherwise, it is definitely settled that an ordinance, and even a legislative enactment, is subject to the constitutional attack that same is unreasonable, oppressive and arbitrary to such extent as to deprive one of property without due process of law. This has been decided innumerable times.

■ Second. It is next contended that the reasonableness of an ordinance is a question of law, and that the facts in evidence do not establish as a matter of law that the classification of defendant's property as residential property was unreasonable or arbitrary.

A like contention was made in the case of Houston & T. C. Ry. Co. v. City of Dallas, supra, in which a general demurrer was sustained. However, the Supreme Court reversed and remanded the case for trial upon the facts alleged. Among other things it was held (as shown by the syllabus) as follows:

"The police power, though its limits are not capable of precise definition, is not arbitrary or unrestrained; the courts may inquire into the reasonableness of a proposed exercise of it, and may deny the right where the public protection to be accomplished by a city ordinance involves an oppressive loss to the property owner affected, in proportion to. the good accomplished, the question of reasonableness being one of law, but dependent upon the facts to be established."

The recent case of City of Amarillo v. Stapf, 129 Texas 81, 101 S. W. (2d) 229, and 109 S. W. (2d) 258, is decisive in this respect. In 129 Texas 81, 101 S. W. (2d) 229 the Supreme Court answered certified questions from the Court of Civil Appeals, and the opinion there contains holdings which are in some particlulars applicable here. The Court of Civil Appeals thereafter considered the holding of the trial court upon the question of unreasonableness of the ordinance, and upheld the implied finding of the court in that respect, saying:

"Under this testimony we are of the opinion that the ordinance, though a valid enactment in its general aspects, as applied to the property of the plaintiff is clearly arbitrary and unreasonable, and therefore unenforceable as to his proposed foundry."

That court cited numerous authorities which are pertinent here. This holding was necessarily approved by the Supreme Court in dismissing application for writ of error with notation of "Correct Judgment."

■ In our opinion, the judgment of the trial court may justly be sustained upon one or more theories. There is ample evidence to sustain a finding that defendant's lot is practically worthless as residential property. In the first place, a residence thereon would have to be located within a few feet of a drug store and liquor store. In the next place, it would have to be located practically upon the brink of a deep drainage ditch, which the photographs showed carried a considerable flow of water. Besides, the lot faces upon the principal thoroughfare of the city, and immediately across the street from same another street opens into University Boulevard. It is thus seen that a residence on this lot would be subject to all of the discomforts and inconveniences of a constant stream of traffic. In addition, there is already a business being conducted immediately east of the lot. While mere inconvenience and depreciation in value are not sufficient within themselves to constitute unreasonableness, yet it is settled that when depreciation in value is such as to make the property practically worthless for the designated use, this constitutes confiscation. In Pennsylvania Coal Co. v. Mahon, 260 U. S. 393, 28 A. L. R. 1321, referring to the matter of values in connection with the exercise of a power such as is here involved, the Supreme Court said:

"Government hardly could go on if to some extent values incident to property could not be diminished without paying for every such change in the general law. As long recognized some values are enjoyed under an implied limitation and must yield to the police power. But obviously the implied limitation must have its limits, or the contract and due process clauses are gone. One fact for consideration in determining such limits is the extent of the dimunition. When it reaches a certain magnitude, in most if not in all cases there must be an exercise of eminent domain and compensation to sustain the act."

We also refer to the following cases: City of Little Rock v. Pfeifer, 277 S. W. 883; Nectow v. Cambridge, 277 U. S. 183, 72 Law Ed., 842; Strain v. Mims, 193 Atl. 754; Dowsey v. Kensington, 177 N. E. 427, 86 A. L. R. 642; Taylor v. Jacksonville, 133 So. 114; Phillips v. Township Council, 198 Atl. 368.

We do not think the placing of this lot in the residential district can be upheld upon the theory that its incorporation in

such district was in furtherance of a general plan designed for the protection of the city as a whole. The right to sustain the validity of an ordianance on the ground that same is an indispensable or an essentially necessary part of a general zoning scheme has recently been discussed in several opinions, notably in Seattle Title Trust Co. v. Roberge, 278 U. S. 116, and Women's Kansas City St. Andrew Society v. Kansas City, Mo., 58 Fed. (2d) 593. In a consideration of this question a principle emerges which is clearly recognized by our Supreme Court in the case of Houston & T. C. Ry. Co. v. City of Dallas, supra. This principle is that if the attempted protection to the public involves an oppressive loss to the property owner, and the protection afforded appears to be doubtful or inconsiderable, the ordinance will not be sustained. For instance, in said case the Court said: "If it be true that there is to be no benefit to the public from the proposed change, or a benefit which is inconsiderable when compared with the detriment to be suffered by the respondent, who will say that it is just and reasonable to subject respondent to such expense and loss as is averred?"

Again, as is said in several cases, "the seriousness of the restriction upon the private right is to be considered in balance with the expediency of the public interest." Brady v. City of Keene, 4 Atl. (2d) 658; Woolf v. Fuller, 174 Atl. 193, 94 A. L. R. 1067, Oklahoma City v. Dolese, 48 Fed. (2d) 734.

In this connection, it is held that the importance of any particular lot or particular piece of property to a general zoning scheme may be determined partly by the fact of whether or not such property comes within any of the exceptions allowed by the ordinance.

We note that in the ordinance under consideration the Board of Adjustment may make exceptions as follows:

"(3) Permit the extension of a building or use into a more restricted district immediately adjacent thereto, but not more than 50 feet beyond the boundary line of the district in which such building or use is authorized.

"(5) Permit in any district, such modification of the requirements of these regulations as said board may deem necessary to secure an appropriate development of a lot where adjacent to such lot on two or more sides there are buildings that do not conform to these regulations."

It appears from the proof in this case that defendant is almost entitled to an exception as a matter of law. At any rate, in view of these exceptions, there is ample proof to sustain

a finding by the trial court that the placing of this particular lot in the residential section is not an essential part of the general scheme, and the protection afforded to the general public by its inclusion therein is negligible when compared to the manifest depreciation in the value of said lot by excluding it from the business district.

For the reasons stated herein the judgment of the Court of Civil Appeals is affirmed.

Opinion adopted by the Supreme Court January 3, 1940.