## CITY OF UNIVERSITY PARK et al. v. HOBLITZELLE.

### No. 13150.

Court of Civil Appeals of Texas. Dallas.
March 15, 1941.

Rehearing Denied April 19, 1941.

Percy C. Fewell, of Dallas, for appellants.

D. A. Frank and D. A. Frank, Jr., both of Dallas, for appellee.

BOND, Chief Justice.

Karl Hoblitzelle, owner of property in University Park, a municipal corporation, was denied a permit to erect a brick building 100 feet wide, on lots 1 and 2, block B, to front on Preston Road and extend back, flush with St. Andrews Drive, 90 feet, to be used as retail business stores, in violation of the terms of the zoning ordinances of said City. These lots were originally laid off by investors to front on St. Andrews Drive, and designated and zoned as single residence lots, all improvements thereon to face that street, or drive, and set back 30 feet from the south line. These limitations and restrictions, affecting the lots, were recognized, observed and maintained at the time of Hoblitzelle's purchase of the property. Later, the City amended the ordinances to allow the building of apartment houses.

St. Andrews Drive, extending east and west, being the southern boundary of said City and the northern boundary of Highland Park, another municipal corporation, is exclusively a residential street. Preston Road is also a residential street, extending north through University Park and south through Highland Park to the City of Dallas, being the principal highway through the two cities, and beyond. Authorities of University Park have never extended permits for the erection of buildings to be used for business on St. Andrews Drive, and none on the east side of Preston Road; however, on the west side of Preston Road and immediately north of Mr. Hoblitzelle's property, several buildings have been erected and used for business; and south, across St. Andrews Drive, facing Preston Road, the authorities of Highland Park have recently granted Mr. Hoblitzelle and others the privilege of developing that block, about 214 feet along Preston Road, for business enterprises; and still further south, and west of Preston Road, in Highland Park, is located an extensive urban business section—Highland Park Village.

The City of University Park has a duly elected and qualified Board of Adjustments, consisting of several members, to whom are referred all such applications as here involved, and has adopted zoning ordinances affecting all property within the city limits. Mr. Hoblitzelle appealed to this Board for the coveted permit and, on being refused, brought this action in a district court for mandamus and injunction, to enable him to use his property in a manner designated by him for business, contending that the property is located within a business district, thus the action of the city authorities, in refusing his application, was unreasonable and arbitrary. The cause was submitted to a jury and on findings, in effect, that the action of the city authorities in denying Hoblitzelle a permit was "unreasonable or arbitrary," a writ of mandamus and injunction was granted, compelling the City to grant the permit, and restraining said authorities from interfering with Hoblitzelle's erection of his building.

The ordinances and law applicable to the zoning of property and accessory buildings by the City of University Park, and particularly in the immediate vicinity of the property here involved, have recently been cited and discussed by this Court in Connor v. University Park, 142

S.W.2d 706, in which we expressly held that the ordinances of said City are valid; thus, considering the attack there made, that the zoning restrictions limited to homes are unreasonable or arbitrary, therefore void as to the property here involved, it was incumbent upon the party to allege and prove facts which make the application unreasonable; and if its validity is fairly debatable, courts are not authorized to substitute their judgment for that of the governing body of the city. Whether the ordinance excluding business and trades from the residential district is reasonable or unreasonable, or whether the power conferred upon the Board of Adjustments, a governmental agency of the city, is exercised arbitrarily or not, is for the courts to determine as a matter of law. See, also, Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475; Munger, etc., Co. v. City of Groesbeck, Tex.Civ.App., 194 S.W. 1121; Luse et al. v. City of Dallas, Tex.Civ.App., 131 S.W.2d 1079.

It will serve no useful purpose to cite additional authorities, that the segregation of industries, commercial enterprises, and dwellings to particular districts, prevent congestion of population, secure quiet residential districts, expedite local transportation, facilitate the suppression of disorder, and regulate sanitation. The doctrine is supported by authorities the country over. In Munger v. City of Groesbeck, supra [194 S.W. 1123], this court quoted with approval the remarks of the Supreme Court of Minnesota, in the case of Evison v. Railway Co., 45 Minn. 370, 48 N.W. 6, 11 L.R.A. 436, which we think are appropriate here: "Much must be left to the judgment and discretion of the city council, and when they have exercised their judgment and discretion in passing an ordinance it is prima facie valid, and, to justify a court in setting aside their action, its unreasonableness, and the want of necessity for it as a measure for the protection of life and property, must be clear, manifest, and undoubted, so as to amount, not to a fair exercise, but an abuse of discretion, or a mere arbitrary exercise of the power of the council."

On consideration of Mr. Hoblitzelle's application, the Board of Adjustments of the City of University Park, exercising the powers granted by the ordinances of said City, denied the application, assigning therefor the following reasons, which we think are fully supported by the record:

"1. There is a two-story brick house on Lot two of said Block 'B' now being used as a single-family dwelling and no arrangements have been made for removing the same, nor does the appellant offer any assurance that all of said Lot two will not continue to be so used and therefor no part thereof will be available for or used in connection with the proposed business use;

"2. That each and all of Lots 2, 3, 4, 6 and 7 in Block 'B', and Lots 7, 8, 9, 10, 11 and 12 in Block 'C' in said Saint Andrews Place Addition are improved and used for single-family dwellings and the houses on each of said lots face Saint Andrews Drive;

"3. That the said houses on Saint Andrews Drive are set back thirty feet or more from the property line facing Saint Andrews Drive while the appellant proposes to set his proposed buildings on the south property line facing Saint Andrews Drive;

"4. That as originally and presently platted the front of Lot one of said Block 'B' is on Saint Andrews Drive with the side line abutting on Preston Road;

"5. That Saint Andrews Drive is a very narrow street, the land being dedicated to public use being only thirty-five feet, which is much less than the width of land usually dedicated to public use as streets in the City of University Park, and the paving thereon is only twenty-six feet in width and a substantial and serious traffic congestion would result if such permit were granted;

"6. That Saint Andrews Place Addition was laid out and platted and so far as it has been improved it has been developed as an exclusively residential district and the platting arrangement and development thereof is improper, impractical and unsuited for business or commercial development;

"7. That if business buildings and commercial uses were permitted on the property in question, it would probably be necessary to widen Preston Road very soon at a very substantial cost to this City;

"8. That a very real and substantial additional traffic hazard would result from the granting of such permit;

"9. That a substantial expense would necessarily be encountered and incurred by the City of University Park for essential

additional police supervision if such permit were granted;

"10. That the installation, operation and maintenance of additional traffic regulations and controls would be essential if such permit were granted;

"11. That greater noises and offensive odors would emanate from the proposed buildings and their proposed use so that the comfort of the surrounding homes would be substantially decreased if the said permit were granted;

"12. That irreparable injury to the present comprehensive zoning plan of this City would result if such permit were granted;

"13. That the public welfare requires that a margin of safety be provided for the preservation of the comprehensive zoning plan of this City and business buildings and business uses on the property in question would forever destroy the required margin;

"14. That the property in question is adapted to the use permitted in the single-family dwelling district;

"15. That the market value of surrounding residential property would be substantially decreased by reason of the putting of business on the property in question if the said permit were granted;

"16. That the property in question while restricted to the uses permitted in single-family dwelling districts by the zoning ordinance as marketable by a willing seller to a willing buyer at a reasonable and fair price;

"17. That the proposed structure does not meet the requirements of the building code of this City, but counsel for the appellant promises to undertake to amend the plans to meet such requirements;

"18. The property in question is adaptable to and highly desirable for the uses permitted in the apartment district and although the appellant has not requested permission to so use it, such uses would be much less injurious than the presently proposed use."

The issue therefore narrows to the inquiry, shall the findings of the Board govern in a matter entrusted by law to their discretion (a purely governmental function), or the findings of the jury be substituted therefor? Courts may determine whether or not it appears that the governing body of a city acted arbitrarily, but when the facts are fairly debatable, legislative judgment of the legally constituted Board must prevail. Manifestly, it cannot be said under this record that appellee established that there were no issuable facts, or that, as a matter of law, there was no basis for the exercise of governmental functions by the Board in denying the permit. Whether a particular ordinance is reasonable or arbitrary presents a question of law for the court and not for the jury; and, in determining the law, the court will have due regard to all the circumstances of the city, the objects sought to be attained and the necessity existing for the ordinance. Indeed, the ordinance may have a detrimental effect on individual property, as in the case here; and we might add that the zoning of Mr. Hoblitzelle's property for homes materially affects the money value of his property, which, perhaps, is not as attractive for homes as for business; but, in the march of progress, private interests must yield to the good of the community. The denial of the permit sought by appellee evidently was intended to promote the public safety, health, prosperity, convenience, morals, and general welfare of the city; there is no evidence to the contrary. Or, if it can be said that the evidence raises the issue of any of the material facts upon which the city authorities refused the permit, then the law delegates to the city authorities, and not to courts or juries, the power and duty of determining the sufficiency of issuable facts in the exercise of a purely governmental function. Paraphrasing the language of Judge Gaines, in the case of Sansom v. Mercer, 68 Tex. 488, 5 S.W. 62, 2 Am.St.Rep. 505, he said: "If there is any controversy as to the existence of the facts upon which the Board denied the requested permit, the function of the Board was discretionary, and it cannot be compelled to grant the permit."

It follows that the verdict of the jury cannot serve as the basis for the judgment entered by the trial court directing the authorities of the City of University Park to issue Hoblitzelle a permit to erect a building to be used in violation of the City's zoning ordinance. The mandamus and injunctive relief should not have been issued, therefore, the orders are dissolved and judgment here rendered for appellants.

Reversed and rendered.