EGGEBEEN and others, Respondents, vs. SONNENBURG and others, Appellants: CITY OF SHEBOYGAN, Defendant.

*November 3—December 2, 1941.*

216

For the appellants there was a brief by *Werner & Clemens* and *Currie & Leberman,* all of Sheboygan, and oral argument by *Geo. R. Currie.*

For the respondents there was a brief by *Bassuener, Humke & Poole* of Sheboygan, and óral argument by *John M. Poole.*

FAIRCHILD, J.   Zoning by municipalities is allowed under sec. 62.23 (5), Stats., now numbered sec. 62.23 (7), and sec. 62.23 (5) (a), Stats. 1939, provides that "such regulation is declared to be for public health, safety and welfare." That section also permits the amendment of zoning ordinances.   The main question presented is whether the amendment adopted by the common council is justified as being in the interests of public health, safety, or welfare.   The facts of this case were apparently considered by the members of the planning commission and the common council to show that the restriction by which the use of the land of appellants was limited in the original ordinance left the land valueless to appellants.   The topography of the land and the nature of the fill is such as to make the building of detached private dwellings

thereon so costly that if so limited no use of the lots whatever for the benefit of the owners remained. The city engineer of Sheboygan testified that the property under the limitations fixed in the original zoning ordinance has been left vacant and "an eyesore for a number of years. No one will buy lots in there for building purposes on account of the excess cost of putting in proper foundations." The floating foundation was shown to cost from $400 to $450 more than the conventional type and the use of piling in constructing a foundation is still more expensive. Some testimony showed that a floating foundation might not be practical, as in the case of Sonnenburg's own home described in the statement of facts. It appears from a fair and impartial analysis of all the testimony that the rezoned tract is unsuitable for building single-family residences.

Zoning is a matter within legislative discretion and if the facts do not show the bounds of that discretion have been exceeded we must hold that the action of the legislative body, the common council, is valid and to be affirmed. *La Crosse v. Elbertson,* 205 Wis. 207, 211, 237 N. W. 99; *Geisenfeld v. Shorewood,* 232 Wis. 410, 415, 287 N. W. 683. The lower court's opinion that the amendment was not proper is based principally on the idea that those who built private dwellings in the surrounding neighborhood relying on the classification of this property as residential "have acquired certain rights" which they would be deprived of were the amending ordinance held valid. While the respondents may suffer an annoyance they have no legally protectible rights merely because of their reliance on the zoning ordinance. The theory of vested rights under an ordinance overlooks the fact that rights granted by legislative action under the police power can be taken away when in the valid exercise of its discretion the legislative body sees fit. Property is always held subject to the police power. Bassett, Zoning, pp. 32, 108, 178; *Piper v. Ekern,* 180 Wis. 586, 591, 194 N. W. 159. The theory of vested rights relates only to such rights as an owner of property may possess

not to have his property rezoned after he has started construction. The rationale of such cases is that he has entered on construction work or incurred liabilities for that work which he would be deprived of by the rezoning. Smith, Zoning Law and Practice, p. 43, § 19, p. 122, § 89; *Rosenberg v. Whitefish Bay,* 199 Wis. 214, 217, 225 N. W. 838; *Lindemann v. Kenosha,* 206 Wis. 364, 369, 240 N. W. 373. We are of the opinion that the filling and the experience showing the impracticability of building private dwellings thereon are facts on which the common council could conclude the change in classification was in the interest of public health, safety, and welfare. As long as the common council acted within the bounds of the legislative field, its discretion is controlling. A court cannot substitute its opinion for that of the legislative body. *Geisenfeld v. Shorewood, supra;* Metzenbaum, The Law of Zoning, p. 77.

The law of this state recognizes the doctrine that incidental damage to property resulting from governmental action or laws passed in the promotion of public welfare, health, and safety is not considered a taking of the property. But "if in the prosecution of governmental functions it becomes necessary to take private property, compensation must be made." *State ex rel. Carter v. Harper,* 182 Wis. 148, 153, 196 N. W. 451; *State ex rel. Tingley v. Gurda,* 209 Wis. 63, 243 N. W. 317.

It having become evident that the original ordinance relegated appellants' property to a single purpose for which it was unfit and useless, the legislative body might very well reclassify portions of the neighborhood under reasonable and constitutional enactments. The effect of the original legislation was the taking of appellants' property by the destruction of their right to a beneficial use of it. This being the situation, the trial court ought to have upheld the amending ordinance.

Cases which have treated with questions like the one before us have gone on the theory that the division of cities into zoned districts has contributed to the welfare of the communities but

that the burden as far as possible must be equally distributed. "Hardships and difficulties there will be and many annoyances; these usually follow any restriction upon the free use of property. When, however, the adjustment becomes so one-sided as to be unreasonable and arbitrary, unnecessary to the preservation of the scheme and purpose as a whole, approaching the point where an owner is deprived of any beneficial or profitable use of his property, then the court should step in and afford relief." *Matter of Eaton v. Sweeny,* 257 N. Y. 176, 177 N. E. 412; *Arverne Bay Construction Co. v. Thatcher,* 278 N. Y. 222, 15 N. E. (2d) 587.

Objection is made to zoning this particular area as a Class C residence district when it is entirely surrounded by a Class A residence district on the ground it is "spot zoning" and therefore to be condemned. Although this piecemeal method of altering zoning ordinances may be unsatisfactory in practice because it departs from the ideal, it may be the only way of protecting rights which must be recognized. In other states appeal boards have issued variance permits to meet unusual situations as the common council concluded this one to be. Each case must be decided on its own facts. Bassett, Zoning, pp. 122, 131, 145; *Higbee v. Chicago, B. & Q. R. Co.* 235 Wis. 91, 292 N. W. 320.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment holding the amending ordinance to be valid and effective.