## HAM et al. v. WEAVER et al.

### No. 4676.

Court of Civil Appeals of Texas. El Paso.
Dec. 31, 1949.

Rehearing Denied Feb. 15, 1950.

Maverick, Putman & Putman, Hugh R. Robertson, San Antonio, for appellants.

Parker, Smith & Rice, San Antonio, for appellees.

PRICE, Chief Justice.

Opinion.

This suit was filed by Frances S. Weaver and sixteen others, plaintiffs below, against Roy L. Ham and Eva Rosow and the City of San Antonio, defendants, to annul and

cancel an ordinance passed by the San Antonio City Commission amending the original City Zoning Ordinance and changing city block A-54 at the corner of McCullough Avenue and Bushnell Avenue from a single residence A-Zone to an apartment house D-Zone. The case was tried without a jury and the court rendered judgment for plaintiffs annulling the ordinance and permanently enjoining the defendants from acting in any manner under the ordinance. The defendants perfected appeal from said judgment.

The plaintiffs all own property in the neighborhood, and which was formerly in the same zone as said Block A-54. Plaintiff Frances S. Weaver owned a tract 200 x 300 feet, or 60,000 square feet, which adjoins and is north of the Ham-Rosow tract. Plaintiff Charles Schreiner, Jr., owns a tract 350 x 335.8 feet, or 117,530 square feet; the defendants Ham and Rosow own the balance of said block, that is, a tract 150 x 300 feet, or 45,000 square feet. Defendant city, acting in pursuance of Art. 1011A enacted a comprehensive zoning ordinance, duly passed and approved by the City Commission on November 3, 1938. Section 2 of said ordinance provided for the division of said City into thirteen types of districts, which included the three designated respectively as A, single family residence districts, D, apartment districts, B, residence districts. The ordinance defined in substance Zone A and provided in the A single family residence district no building or land shall be used and no building shall be hereafter erected or structurally altered which is arranged or designed to be used for other than one or more of the following uses: First, One family dwelling; Second, Public park or playground; Third, accessory buildings will be permitted. District A, or Zone A, is further defined by the basic ordinance. In regard to Zone B district it was provided in substance no building or land shall be used and no building shall be hereafter erected or structurally altered which is arranged or designed for use for other than one or more of the following uses: 1—One family dwellings; 2—Two family dwellings; 3—Churches, schools and colleges. Several other pur-

poses are enumerated but same are not relevant here. It further provides accessory buildings will be permitted, including a private garage and servants' quarters when located not less than sixty feet from the front lot line. Zone D was defined in Section 5 of said ordinance, with Zone C and E, substantially as follows: In the C residence district and the D and E apartment districts no building or land shall be used and no building shall be hereafter erected or structurally altered which is arranged or designed to be used for other than one or more of the following uses: 1—Any use permitting the business in the B residence; 2—Boarding or lodging houses; 3—Hospitals and clinics, excepting tubercular and veterinary hospitals and clinics and those for alcoholic, narcotic, insane or feeble minded patients. In D zone several other sorts of buildings not pertinent here are permitted. Multiple dwellings, apartment houses or group houses not including tourist or trailer camps, courts or lodges are permitted.

By virtue of said Zoning Ordinance of November 3, 1938, all the properties now respectively owned by plaintiffs and partly owned by defendants Ham and Rosow, including all of Block A-54 lay within Zone A District; that said district embraces many blocks lying to the north, south, east and west of Block A-54.

On or about November 4, 1948, at the request of defendants Ham and Rosow, the City Commission passed and approved an amendment to said Zoning Ordinance purporting to change the whole of said Block A-54 from an A Zone family residence zone to D apartment zone.

Plaintiffs allege that the amendatory ordinance is null and void because at the time of its passage the City Commission did not have any substantial evidence before it to justify the change in zoning purposes or uses of said Block A-54 as prescribed in the original zoning ordinance of November 3, 1938; further that said amendatory ordinance constituted spot zoning and was unconstitutional and void in that it was arbitrary and unreasonable, and had no substantial relation to the public health, safety, morals or general welfare; that the amen-

datory ordinance was passed and approved without the authority of and contrary to Art. 1011a of the Revised Civil Statutes of Texas in that it does not promote the health, safety, morals or the general welfare of the community, but on the contrary bears no substantial relation to the health, safety, morals and general welfare of the community; that if defendants Ham and Rosow are permitted to pursue the proposed enterprise in erecting a large apartment house it would destroy the entire section of the City in which plaintiffs reside for single private home purposes; further the amendatory ordinance, if enforced, would serve only the private interest of defendants Ham and Rosow and will be detrimental to the interests of plaintiffs herein and the general public; that there has been no substantial change of conditions in or near the neighborhood where the change is requested since the enactment of the original Zoning Ordinance which warrants the spot zoning of Block A-54 and changing it from Zone A to Zone D. Numerous other grounds are enumerated as to why the ordinance should be held void.

Defendants Rosow and Ham answered, urging a number of special exceptions, then plead general denial; further allege specially that the action of the City Commission in passing the said amendatory ordinance is an exercise of police power by the municipality in its governmental capacity, and as such cannot be attacked by the plaintiffs without a clear and unambiguous showing of malfeasance on the part of the city officials; that in the passage of the ordinance all the requirements of Articles 1011a to 1011j, Vernon's Annotated Civil Statutes, and Art. 1013 thereof were fully complied with that full notice was given and a hearing held as prescribed by law and thereafter the said ordinance was passed and approved by the City Commission of the City of San Antonio, Texas.

The court on the demand of plaintiffs made and filed herein its findings of fact and conclusions of law. These findings are somewhat lengthy, and we shall endeavor, insofar as is consistent with clarity, to summarize same. It was found on November 3, 1938, the City, acting through its Commis-sion, duly passed and approved a comprehensive Zoning Ordinance pursuant to the provisions of Art. 1011a to 1011j, inclusive. The ordinance provided for the division of the city into several types of districts, including three designated respectively as A, single family residence districts; D, apartment house districts; B, residence districts. The court's findings as to what constitutes a single family residence district, that is, A Zone, has been heretofore set out in this opinion in summarizing the pertinent part of the basic ordinance. The part of the ordinance establishing Zone D is quoted and is in substance as has been heretofore set out. It was further found that an official map of the City of San Antonio was attached to and expressly made a part of the basic ordinance and Sections 7, 9 and 10 of said map, classified as Zone A district and which lay within the city, bounded as follows: "Commencing at the Northeast corner of said map Section 17, at a point in the line of the North City Limits on the property of the Academy of the Incarnate Word; thence West along the North City Limit line to Shook Avenue; thence South on Shook Avenue to its intersection with Hollywood Avenue; thence West along Hollywood Avenue to McCullough Avenue; thence North on McCullough to Hildebrand Avenue; thence West along Hildebrand Avenue as shown on said map Section 17, (description continued from map Section 9); then continuing West on Hildebrand Avenue to San Pedro Avenue; thence South on San Pedro Avenue to Agarita Avenue; thence East on Agarita Avenue past Lots One (1) Two (2), and Three (3), of City Block Three Thousand Fifty-eight (3058); thence South along the East boundaries of Lots Three (3) and Fourteen (14), of City Block Three Thousand Fifty-eight (3058), (description continued from map Section 10); continuing South across Mulberry Avenue along the East boundary of Lot Three (3), in City Block Three Thousand One (3001) to alley; Thence East along said alley to Howard Street; thence North along Howard Street past the North edge of map Section 10 back on to map Section 9, continuing North on Howard Street to Summit Ave-

nue; thence East on Summit Avenue off of the East edge of map section 9, and continuing from map Section 17 East along Summit Avenue to McCullough Avenue; thence North along McCullough Avenue to East Kings Highway; thence East along Kings Highway where the same runs along the North boundary of the St. Anthony College site to Shook Avenue; thence North along Shook Avenue to Bushnell Avenue; thence East along Bushnell Avenue to Dial Street; thence North along Dial Street to Hill Top Court; thence East along Hill Top Court and continuing East along East Hildebrand Avenue (the continuation of Hill Top Court) to and along the South boundary of the property of the Incarnate Word to a point approximately where East Hildebrand Avenue crosses the most easterly fork of the San Antonio River, as shown on map Section 17; thence North to the place of beginning in the North City Limits line."

It is further found that at the time of the adoption of said basic ordinance that all structures in said Zone A district were one family dwellings and their accessory buildings, with the exception of approximately four apartment house structures then and since then used as such. That Section 10 of said basic ordinance provided for these non-conforming uses; that further that on November 9, 1948, the city of San Antonio acting through its City Commission, after a hearing passed an ordinance amending the basic ordinance which among other provisions purported on its face to change the classification of the whole of city block No. A-54 which lay within the Zone A District from Zone A to Zone D; that this amendatory ordinance was passed following consideration by the Zoning Commission of the applications of defendants Ham and Rosow for such D Zone; that the Commission in its report to the City Council unanimously recommended that said tract of land be rezoned, and the recommendation was adopted by the four to one vote of the Commission; that prior to the adoption of said amendatory ordinance or amendment on November 4, 1948, notice of a public hearing of the matter was given in the manner and at the time required by law, and a full hearing was accorded to the opponents and proponents of the proposed change. It was found the basic ordinance at the time it was enacted bore substantial relation to the health, safety, morals and general welfare of the community; that following its enactment up to and following the date of the enactment of the amendatory ordinance to the date of the trial there was no substantial change in the character of Zone A District or in the character of the structures therein or of the uses thereof. The court further found in the interval between the enactment of said two ordinances and to the trial of the case no new structures were erected in the Zone A District other than additional one family dwellings, and there was no change in the use of any of the property therein in violation of the basic ordinance. It was found there was no substantial evidence showing any substantial change in the character of Zone A District between the enactment dates of the basic ordinance and of the amendatory ordinance; that there was no substantial evidence at the hearing which justified a change in the zoning properties or the uses of said Block A-54 from that prescribed by the basic ordinance; there was no substantial evidence at the hearing to support the proposition that the amendatory ordinance as of the time of its enactment bore any substantial relation to the public health, safety, morals or general welfare; that the undisputed evidence was that the amendatory ordinance did not in fact bear any substantial relation to the public health, safety, morals or general welfare; that there was no substantial evidence at the hearing that a change of zoning classification of Block A-54 was demanded by the interests of the health, safety, morals or general welfare of the community; that no fairly debatable issue was raised by the evidence, either at the hearing or before the court that would sustain the amendatory ordinance as being substantially in the interests of the health, safety, morals or general welfare of the public.

Block A-54 is a tract of land near the center of the Zone A District and it is

surrounded by said Zone A District; the defendants Roy A. Ham and Eva Rosow own a vacant lot 150 by 300 feet out of said block, being about one-fifth of said Block A-54, and the remainder of said Block A-54 is owned by two of the plaintiffs who opposed the passage of said amendatory ordinance; the amendatory ordinance creates a small and unwarranted Zone D island in the center of the said Zone A District and it constitutes unjustifiable spot zoning. It was found the tract of vacant land belonging to defendants Ham and Rosow included in Block A-54 is 45,000 square feet, is located at the corner of the intersection of McCullough Avenue and Bushnell Avenue, being one of the principal arteries of the city at the time of the basic ordinance and thereafter. McCullough Avenue has been widened since the adoption of the basic ordinance. Three blocks north of the Zone A District up McCullough Avenue and lying north of Hildebrand Avenue, is located a commercial district. The part of this commercial district lying east of McCullough Avenue was designated as commercial by the basic ordinance and the part of same lying west of McCullough Avenue has been classified as commercial by subsequent amendment. Approximately one and one-half miles to the south of said Block A-54, McCullough Avenue was at the time of the trial of this case being extended through and into Kenton Avenue, then into Fifth Street, and ultimately crossing Broadway, Houston and Commerce Streets. Since the date of the enactment of the basic ordinance the population of the city of San Antonio has about doubled, and there is now and has been for some time a strong demand for apartments and other kinds of places of human habitation, and there are suitable apartment house sites within the Zone D Districts. The vacant property belonging to defendants Ham and Rosow has available all utilities such as transportation, water, lights, telephone and paved streets.

As a conclusion of law it was found in substance that the action of the City of San Antonio by and through its City Commission constituted an abuse of its discretion; that the amendatory ordinance is arbitrary and unreasonable and therefore void. That same is not substantially in the interest of nor to promote the health, safety, morals or general welfare of the community and that the action of the amendatory ordinance was not within the scope of the police powers of the City and the same is unconstitutional and void.

 Cities acquire the power to enact zoning laws from the Acts of the 40th Legislature, p. 424, chap. 283, Acts of 1927. These appear in Vernon's Annotated Civil Statutes as Articles 1011a to 1011j inclusive, Art. 1011a is as follows: "Art. 1011a. Grant of power for zoning. For the purpose of promoting health, safety, morals, or the general welfare of the community, the legislative body of cities and incorporated villages is hereby empowered to regulate and restrict the height, number of stories, and size of buildings and other structures, the percentage of lot that may be occupied, the size of yards, courts, and other open spaces, the density of population, and the location and use of buildings, structures, and land for trade, industry, residence, or other purposes."

Article 1011e provides for making changes in the various districts established. The amendment to the basic ordinance as to Block A-54 seems to have been passed in accordance with the requirements of the Act of the 40th Legislature relating to zoning, a portion of which has been heretofore copied herein. It is thought to be elementary that in the enactment or amendment of a zoning law a city acts under the power conferred by said Act of 1927. The enactment of these ordinances is by virtue of delegation of police power in this respect by said act of 1927. It is thought to be true that unless a zoning ordinance subserves the promotion of the health, safety, morals, or the general welfare of the community, the legislative body of a city has not the power to pass same under the said act of the Legislature. Its validity depends on its tendency to subserve the objects specified. In short, Articles 1011a to 1011j are a delegation by the State of police power within the limits specified, to regulate building within cities to which it is applicable. Art. 1011e pro-

vides for changes or amendments of the basic ordinance. It is thought that the amendment of the basic ordinance is subject to the same conditions and limitations as the basic ordinance. Unless a provision of the basic ordinance or amendment thereto appears on, its face to be unreasonable and arbitrary, there is a presumption that the legislative body of a municipal corporation is not lacking in power to pass same. Harvey v. City of Seymour, Tex.Civ.App., 14 S.W.2d 901; City of Dallas v. Lively, Tex.Civ.App., 161 S.W.2d 895, Wr. Ref. and authorities there cited.

The legislative body of a city having passed a zoning ordinance may amend same where such amendment tends to promote the general welfare as required by Art. 1011a. This power is expressly conferred by Art. 1011e. No resident or owner of property acquires a vested interest under a zoning ordinance. Art. 1011e Vernon's Ann. Statutes; Eggebeen v. Sonnenburg, 239 Wis. 213, 1 N.W.2d 84, 138 A.L.R. 500; Reichelderfer v. Quinn, 287 U.S. 315, 53 S.Ct. 177, 77 L.Ed. 331, 83 A.L.R. 1429.

However, the power to amend a zoning ordinance, once enacted, is subject to the same limitations and has the same extent as the power to enact the ordinance. If the legislative body in the exercise of good faith judgment concludes that the basic ordinance should be changed it may do so, provided same reasonably subserves the public welfare.

It has the power, complying with the law delegating the power, to amend the ordinance, provided that under the evidence it is fairly debatable that the change would subserve the public welfare as provided in said Art. 1011a.

The power delegated to the city by Art. 1011a is limited therein by the provision that it must be "for the purpose of promoting health, safety, morals or the general welfare of the community." It is the delegation of a branch of police power. There is a strong presumption of the validity of the ordinance coming within ambit of the Statute. However, an ordinance establishing a zone regulation having no relation to the promotion of health, safety, morals or general welfare is arbitrary, unreasonable and capricious, and is without validity. Lombardo v. City of Dallas, 124 Tex. 1, 73 S.W.2d 475; Euclid Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 114, 71 L.Ed. 303, 54 A.L.R. 1016; City of Sherman v. Simms, 143 Tex. 115, 183 S.W.2d 415.

Whether the amendatory ordinance in question here is valid or invalid is a question of law. The question may be formulated as follows: Does or does not the evidence leave the issue fairly debatable as to whether the ordinance subserves the public welfare? If under the evidence the issue is fairly debatable, then as a matter of law the amendatory ordinance is valid. On the other hand if the evidence establishes beyond issue the ordinance will not subserve the public welfare the ordinance is invalid. City of San Angelo v. Boehme Bakery, 144 Tex. 281, 190 S.W.2d 67. Judge Hickman in the course of the opinion in above case cites the case of City of University Park v. Hoblitzelle, Tex.Civ. App., 150 S.W.2d 169. See also Edge v. City of Bellaire, Tex.Civ.App., 200 S.W.2d 224, Wr. Ref.; Thompson v. City of Carrollton, Tex.Civ.App., 211 S.W. 970. In short, unless the evidence establishes as a matter of law beyond issue that the ordinance in question does not tend to subserve the public welfare, it is beyond the power of the court to declare same invalid. This is true because it is a matter of legislative discretion.

It seems right to consider the position of those who have built up and improved the zone in reliance upon a restrictive ordinance. Of course one improving his property in a zoned district acquires no vested right. Barrington v. City of Sherman, Tex.Civ.App., 155 S.W.2d 1008, Wr. Ref. n. r. e; City of West University Place v. Ellis, 134 Tex. 222, 134 S.W.2d 1038; Averne Bay Construction Co. v. Thatcher, 278 N.Y. 222, 15 N.E.2d 587, 117 A.L.R. 1117; Eggebeen v. Sonnenburg, 239 Wis. 213, 1 N.W.2d 84, 138 A.L.R. 500.

Ten years have passed since the passage of the basic ordinance and the property owned by defendants has not been used or

in any way changed. There were opinions expressed by some of the witnesses that same was suitable for single residence property and by others that it was not suitable for single residence property but was ideal for an apartment house. It was an issuable fact under the testimony as to whether the passage of the ordinance would increase or decrease the value of the property in the block. Since the passage of the basic ordinance under the authority of the city on property owned by the city within this block there is a library and on the library grounds a school for deaf and dumb children is operated. Plaintiff Schreiner formerly owned the land now held by the defendants and when he sold same he placed a restriction thereon in substance that no garage be erected on the property nearer than 100 feet to his line and that it must open on McCullough Avenue. Since the passage of the basic ordinance the population of the city of San Antonio has doubled. This tends to justify an inference that there must be an increased demand in the city for housing. It seems that Block A-54 has never been platted into lots; that a Mr. Landy, the building inspector for the city of San Antonio testified that under the basic ordinance no further buildings could be constructed on Block A-54, even though same were single family residences. Be this as it may, it does appear from the evidence without dispute that this block in question is of considerable area, and since the passage of the basic ordinance very few, if any, single residences have been erected thereon. The opinions of those testifying as experts as to whether the property owned by defendants within this block was suitable for single residence property, or unsuitable, varied. There were some witnesses affirming that in their opinion it was so suitable, others that it was not, and that it was suitable for the erection of an apartment house.

We have not quoted or summarized all of the evidence, but we deem it sufficient to raise the issue as to whether or not the amended ordinance tended to subserve the public welfare.

In the consideration of this case we have carefully borne in mind that the pur-

pose of endowing the city with police power is to subserve the general welfare. If it appear from the terms of the ordinance or is established by the evidence as a matter of law that it does not so do, then the legislative act is void. City of West University Place v. Ellis, 134 Tex. 222, 134 S.W.2d 1038; Simms v. City of Sherman, Tex.Civ. App., 181 S.W.2d 100; Page v. City of Portland, 178 Or. 632, 165 P.2d 280.

There is a strong presumption in favor of the validity of this ordinance. King v. Guerra, Tex.Civ.App., 1 S.W.2d 373, Wr. denied; City of Dallas v. Lively, Tex.Civ. App., 161 S.W.2d 895.

 In our opinion under the evidence the issue is clearly raised as to whether or not the amendatory ordinance subserved the public welfare. In such case for the judicial department to declare same null and void is an infringement on the legislative power and in excess of the power conferred upon the judicial department by our Constitution.

It is ordered that the judgment of the trial court be reversed and judgment here rendered declaring the assailed ordinance in all respects valid, and denying the injunction sought.