McNUTT OIL & REFINING CO., Inc., et al.
v. BROOKS et al.
No. 4822.

Court of Civil Appeals of Texas. El Paso.
Oct. 10, 1951.

Rehearing Denied Nov. 7, 1951.

874

Andress, Lipscomb & Peticolas, Travis White, City Atty., El Paso, for appellants.

Joseph J. Rey, Albert Armendariz, El Paso, for appellees.

McGILL, Justice.

In a trial to a jury, the trial court at the conclusion of the evidence withdrew the cause from the jury and held invalid the following Amendatory Zoning Ordinance, passed and approved by the City Council of the City of El Paso on the 28th day of September, 1950:

"No. 448.

"An Ordinance Changing the Zoning of Certain Property in the F Neve Survey No. 8.

"Be It Ordained by the City Council of the City of El Paso:

"That the zoning of the following described property be and the same is hereby changed to 'C' Retail within the meaning of the Zoning Ordinance, and that the Zoning Map of the City be revised accordingly:

"A part of a parcel of land in the F Neve Survey No. 8 south of the Franklin Canal and between the Federal Park Addition and the Pasadena Addition, as shown by a map made by R. J. Owen, dated September 3, 1925, and bounded as follows:

"On the north by the southerly line of Paisano Drive; on the east by the westerly line of an unnamed street and the easterly line of Block 4 as shown on said map; on the south by the south lines of Lots 22 and 50 in said Block 4; on the west by the easterly line of an unnamed street and the westerly line of said Block 4:

"Passed and Approved this 28th day of September, 1950.

"(Signed) D. L. P. Duke,
"Mayor,

"Attest:
"Morris Rosenthal,
"Deputy City Clerk."

The defendant (appellant) City of El Paso was perpetually enjoined from issuing any permits or granting any authority under and by virtue of said ordinance to any person permitting any building or other improvements to be erected or constructed on the property described in said ordinance by virtue thereof, and the defendant (appellant) McNutt Oil & Refining Company was perpetually enjoined from building or erecting any improvements upon or otherwise making any use of the property described in said ordinance by virtue thereof.

The judgment recites that plaintiffs are the owners in fee of certain property adjacent or near to Paisano Drive highway in the City of El Paso, all of which property is within a certain zoning district zoned by the City of El Paso as an "Apartment District" devoted exclusively to residential and such other purposes as are set forth in the Comprehensive Zoning Ordinance of the City of El Paso, and that defendant McNutt Oil & Refining Company is the owner of a certain parcel of property within said zoning district, which was changed from an "Apartment District" to a "C Retail District" by the amendatory ordinance No. 448, and

"* * * and it further appearing that said change of zoning constituted a 'spot'-zoning not in accordance with any established zoning plan, and that said spot-zoning was not by reason of or related to the general welfare or public health, safety or morals and served no interest of the general public but was wholly arbitrary and unreasonable and therefore void, and it is the intention of Defendant McNutt Oil and Refinery Company under the said Ordinance Numbered 448 hereinbefore referred to, to construct at once upon its said property so attempted to be re-zoned as aforesaid, a truck terminal and gasoline and oil filling-station by reason of which, and as a result of said attempted re-zoning, Plaintiffs are threatened with, and would suffer, great and irreparable injury which is imminent and for which there is no adequate remedy at law, and the Court therefore being of Opinion that Plaintiffs are entitled to the relief prayed."

The judgment further recites that the parties stipulated that the Comprehensive Zoning Ordinance and certain amendments

thereto were from a standpoint of procedure properly passed, published and adopted by the City Council of the City of El Paso.

Pursuant to the Enabling Act, Acts of 1927, 40th Legislature, page 424, Chapter 283; Vernon's Ann.Civ.St. art. 1011a–1011j inclusive, the City of El Paso, acting by its City Council, on September 25, 1930, passed and approved a Comprehensive Zoning Ordinance. This ordinance recites that zoning regulations and districts have been thereby established in accordance with a comprehensive plan for the purpose of promoting the health, safety, morals and the general welfare of the City of El Paso; that they have been designed to lessen the congestion in the streets, secure safety from fire, panic and other damages, provide adequate light and air, prevent the overcrowding of the land, avoid undue concentration of population and to facilitate the adequate provision of transportation, water, sewerage, schools, parks and other public requirements. Art. 1–2 is as follows: "Zoning Regulations and Districts as herein set forth are approved and established. The City of El Paso is hereby divided into eight classes of Use Districts, termed respectively, Restricted Dwelling Districts, Dwelling Districts, Restricted Apartment Districts, Apartment Districts, Retail Districts, Commercial Districts, Light Manufacturing Districts, and Heavy Manufacturing Districts. The City of El Paso is hereby further divided into eight Area Districts, termed respectively AA Area Districts, A Area Districts, B Area Districts, CC Area Districts, C Area Districts, D Area Districts, E Area Districts, and F Area Districts, all of which are more fully shown upon the Zoning Map which accompanies this ordinance and is hereby declared to be a part thereof. All notations, references, and other information shown upon the said Zoning Map is hereby made a part of this Ordinance and shall be considered as much a part of same as if the matters and information set forth by the said Zoning Map were all fully described herein. Except as hereinafter provided, *no building shall be erected or structurally altered except in conformity with the regulations herein prescribed for the use and area districts in which such building is located as shown by the said zoning map."*

■ The Zoning Map referred to as a part of this Comprehensive Ordinance does not appear in the record. Without it there is no evidence to support the recital in the judgment that plaintiffs' and defendants' property was located in an "apartment" district under the ordinance. The parties assumed this in their briefs, and we shall consider this to be the fact.

■ The trial court having withdrawn the cause from the consideration of the jury, the question presented by appellants' points narrows to whether as a matter of law the uncontroverted evidence supports the conclusion of the trial court that the amendatory ordinance is "spot zoning" not in accordance with any established zoning plan and not related to the general welfare or public health, safety or morals, and serves no interest of the general public, but was wholly arbitrary and unreasonable. If there were any fact issue which would have thrown light on this question of course the court erred in withdrawing such issue from the jury. In our consideration of the case we must therefore view the evidence in the light most favorable to appellants. Barrington v. City of Sherman, Tex.Civ. App., 155 S.W.2d 1008, loc.cit. 1009(1, 2) Wr.ref.w.m. If viewed in this light the evidence shows that it is fairly debatable whether the amendatory ordinance had any relation to public health, safety, morals, or the convenience or general welfare of the City of El Paso and its inhabitants, then the judgment of the legislative body, the City Council, acting in a purely governmental capacity, is final and conclusive and the court erred in substituting its judgment therefor. City of University Park v. Hoblitzelle, Tex.Civ.App., 150 S.W.2d 169, certiorari denied 315 U.S. 781, 62 S.Ct. 806, 86 L.Ed. 1188; Ham v. Weaver, Tex.Civ. App., 227 S.W.2d 286, loc.cit. 292, (10–11) and authorities there cited, reversed Weaver v. Ham, Tex.Sup., 232 S.W.2d 704, 709, in which the Supreme Court approved the following language of this court: "[4] The Court of Civil Appeals correctly held in this case as follows: 'In the consideration of

this case we have carefully borne in mind that the purpose of endowing the city with police power is to subserve the general welfare. If it appear from the terms of the ordinance or is established by the evidence as a matter of law that it does not do so, then the legislative act is void. City of West University Place v. Ellis, 134 Tex. 222, 134 S.W.2d 1038; Simms v. City of Sherman, Tex.Civ.App., 181 S.W.2d 100; Page v. City of Portland, 178 Or. 632, 165 P.2d 280.' [227 S.W.2d 286, 293.]"

It appears from the evidence that prior to the construction of Paisano Drive, U. S. Highway 80 entered the City of El Paso from the east on Alameda Avenue, and came into the downtown business section of the city via Alameda Avenue and Texas Street. Heavy truck traffic took this route and caused traffic congestion on these two streets. Appellant McNutt Oil Company maintained a station for the servicing of such trucks at the corner of Alameda Avenue and Magoffin Avenue on this route. Paisano Drive was laid out and constructed by the State Highway Department with the co-operation of the City of El Paso as an alternate U. S. 80 Highway route for truck traffic. The main reason for its construction was to divert the truck traffic from Alameda Avenue and Texas Street. The area through which this alternate arterial truck highway runs had been zoned, so we assume, by the Comprehensive Zoning Ordinance of September 25, 1930. In the absence of the map we are unable to tell whether it had been zoned for residential and apartment house use, but since there is testimony that the property in the vicinity of the highway had been so zoned by the comprehensive ordinance we assume that the land embraced within the right of way for the highway had also been so zoned. The area was semi-rural territory. The record fails to reveal when it was included within the corporate limits of the City of El Paso. At the time of the trial Paisano Drive had been completed through the eastern part of the city but the western end of the drive within the city limits was still in the process of construction. Appellant McNutt Oil Company maintains a

truck service station at the west end of Paisano Drive. This station is adequate for the servicing of trucks which come into the city from the west, but so far as revealed by the record there is no such station adequate for such servicing of trucks coming into the city from the east over Paisano Drive. Since the completion of the east end of the drive many business establishments have sprung up along its east end, beginning from three to six blocks east of the McNutt property and several blocks west thereof. Appellant McNutt Oil Company purchased the property in question several years ago, before the completion of the east end of Paisano Drive, for the purpose of establishing a truck service terminal station thereon, and the company has expended a substantial sum in preparation therefor. The property is suitable for this purpose. The City Planning Commission of the City of El Paso refused to approve a rezoning of this property as provided by the amendatory ordinance. In a report to the Mayor and City Council dated September 16, 1950, the Commission stated many reasons why it thought the rezoning of this property inadvisable. Summarized, they are that one change in the zoning would lead to others until the whole street would gradually take on a business character and change the speed thereon from forty miles to thirty miles per hour, that land in the vicinity was being considered as a location for a Federal housing project, and that it was suitable therefor; that under a proposed rezoning of a large area in the vicinity a proposed grade school would be located near the property; that the Jefferson High School located north of Paisano Drive near the McNutt property furnished an additional reason for the protection of the home environment in the area which would be jeopardized by the proposed truck terminal. The conclusion of the Commission is "It is the well considered opinion of the Commission that to spot zone any business, and especially a large filling station and truck terminal in a residential area directly between two schools and contrary to a development plan in the making, has no excuse under any sound planning procedure."

Unjustifiable "spot zoning" in the sense that such zoning is arbitrary and unreasonable and has no relation to the exercise of police power and is generally condemned, Weaver v. Ham, supra, loc.cit. 232 S.W.2d 709(5) and authorities there cited, depends upon more than the size of the spot zoned. The zone may be small and of greater benefit to those seeking it than to others; yet if there is a public need for it it does not constitute unjustified "spot zoning". Edgewood Civic Club v. Blaisdell, 95 N.H. 244, 61 A.2d 517; 62 C.J.S., Municipal Corporations, p. 468, § 226(12). Frequently comprehensive zoning ordinances permit the zoning of small areas within limits of the district zoned in which are permitted uses different from and inconsistent with those permitted in the large area. Such zoning forming a part of the comprehensive plan is not considered as unjustified spot zoning. Zahn v. Board of Public Works of City of Los Angeles, 195 Cal. 497, 234 P. 388; affirmed 274 U. S. 325, 47 S.Ct. 594, 71 L.Ed. 1074; Harris v. City of Piedmont, 5 Cal.App.2d 146, 42 P.2d 356; Marshall v. Salt Lake City, 105 Utah 111, 141 P.2d 704, 149 A.L.R. 282; Utah Sup. Ct. Annotations, 128 A.L.R. 740, 149 A.L.R. 292. The question then is, does it appear under the evidence in this case as a matter of law that the amendatory ordinance No. 448 has no relation to the police power delegated to the City of El Paso by the Zoning Enabling Act, i. e., the public health safety, morals, convenience or general welfare of the City of El Paso and its inhabitants. It may be conceded that the Amendatory Ordinance has no relation to the original Comprehensive Zoning Ordinance—that it does not conform to any general plan evidenced by that ordinance. As above stated, prior to the opening of Paisano Drive the heavy traffic from the east came into the city over Alameda Avenue and Texas Street. It caused congestion of traffic on these thorofares, which was one of the main reasons motivating the city in co-operating with the State Highway Department in establishing Paisano Drive. It appears that the city acquired the right of way for this alternate truck highway. Since the map constituting a part of the Comprehensive Ordinance does not appear in the record we do not know how the land on which Paisano Drive is located and which was acquired by the city for this purpose, was zoned prior to the construction of the drive. If we may assume that this land had the same classification as the land of plaintiffs and defendants, then its use as a main arterial highway is most assuredly a departure from the uses for which it was zoned. It is quite clear that the coming of the highway has materially changed the aspect of the entire community through which it runs. From a sparsely settled semi-rural community that portion adjacent to the highway has all the characteristics of property along a much traveled highway entering a city. The evidence reveals that there are business establishments located along the highway within distances a few blocks both east and west of the McNutt property. We do not know whether the property on which these establishments are located was included in the original ordinance, or if so, how it was zoned or how changes, if any, in zoning, were effected. The report and recommendation of the City Plan Commission shows beyond question that the Commission, looking to the future, envisioned an area in proximity to the McNutt property which should be used for the purpose of a Federal Housing Authority, and that property to the southeast thereof should be used for industrial purposes—uses entirely inconsistent with the Comprehensive Zoning Ordinance of September 25, 1930, if the area embraced in the report of the Commission was zoned by that ordinance for residential and apartment purposes. In other words, the evidence shows that due to changed conditions a change of use in a large area covered by the Comprehensive Zoning Ordinance was in the opinion of the Planning Commission deemed advisable, and a rezoning of such area was necessary if the plan of the Commission should ever become effective. Heavy truck traffic on Paisano Drive will necessarily require filling stations and service stations for the repair and servicing of trucks which operate on the Drive. If property fronting on the Drive cannot be used for these purposes then the trucks must go elsewhere, perhaps in the

City of El Paso, thereby adding to the congestion of traffic on its streets, noise and confusion, fumes from exhausts in congested areas, thereby adding to the discomfort and impairment of the health and safety of the inhabitants of the city to a far greater extent than if such service were furnished trucks on property fronting on Paisano Drive. Furthermore, we think the City Council in passing on the legislative question delegated to it could properly consider not only the welfare of the inhabitants of the City of El Paso, but the convenience and welfare of the traveling public that use Paisano Drive. This view was the sole basis for the decision in Ellicott v. Mayor and City Council of Baltimore, 180 Md. 176, 23 A.2d 649, 653, in which zoning of a lot at the intersection of two highways for a filling station was sustained as a lawful exercise of police power. The court points out that the nearest filling stations were a half mile to the west and a mile east of the property zoned, and says: "That provision may possibly be regarded as sufficient for the traffic, but it seems to the court that this is not so clearly true that the action of the City authorities and the Board should be reversed judicially as arbitrary and capricious. We must assume, if it is possible to do so, that these officials exercised their judgment on its sufficiency, and we cannot say that they did not, and acted without good reason. There will doubtless be some reduction in value of the neighboring property from construction of the additional filling station, some detraction from the beauty and attractiveness of the region as it has existed, but if the change is one within the police power of the City, not arbitrary and capricious, that is a detriment which must be suffered. The detriment alone would not prevent the meeting of another public need, if found to exist. And the court has come to the conclusion that in this instance the decision of the City officials should be accepted on the appeal, as it was below."

The presumption is that the amendatory ordinance was valid. Weaver v. Ham, supra. We have concluded that the evidence is insufficient to show as a matter of law that the action of the City Council

in passing Ordinance 448 was arbitrary, unreasonable or capricious, and that therefore the trial court was not justified in withdrawing the case from the jury and substituting his judgment for that of the City Council.

As an additional reason for sustaining the judgment of the trial court the appellee relies on Art. 9–1(6) of the Comprehensive Ordinance, which provides: "No application for change of zoning for a given property may be re-submitted within twelve (12) months from date of action by the Commission or Council, whichever is later, unless the Commission finds that a substantial change has occurred." The contention is that the request for re-zoning had been denied by the City Plan Commission and the City Council within twelve months from the passage of Ordinance 448 by the Council. We think this provision is for guidance of the City Plan Commission and does not apply to the action of the City Council.

The judgment of the trial court is reversed and the cause remanded for another trial. Barrington v. City of Sherman, supra.

Reversed and remanded.

## On Motions for Rehearing

Appellants and appellees have filed motions for a rehearing. Appellees urge that we erred in viewing the evidence in the light most favorable to appellants. Certainly, in determining whether any fact issues were raised, where the Court withdrew the case from consideration of the jury and rendered judgment for appellees, the evidence must be so viewed. Appellants contend that we erred in remanding the cause and that we should have rendered judgment dissolving the injunction. We have carefully considered this question on original hearing. It was the writer's first impression that such judgment should be rendered. However, after consultation and mature reflection, we decided to remand the cause, thinking that probably it had not been fully developed and that a remand was required in the interest of justice. We still adhere to this view. Appellants rely strongly on City of Dallas v. Lively, Tex. Civ.App., 161 S.W.2d 895, 898, wr.ref.

There the cause was submitted to the jury, which among other findings found that (3) it was not necessary to the peace, health, safety or general welfare of the public to prohibit the use of appellee's property for purposes of a gasoline filling station (a use prohibited by the ordinance in question there). In the course of the opinion Associate Justice Young said:

"'The presumption is in favor of the validity of the ordinance. It will be presumed, in the absence of a clear showing to the contrary, that the governing body had sufficient reason, in view of local conditions, to make the classification which they have made; and if there could have existed a state of facts justifying the classification or restriction complained of, the courts will assume that it existed. The burden of establishing its discriminatory character is upon a person attacking it on that ground; and any reasonable doubts as to the validity of the classification will be resolved in favor of its validity.' 30 T.J., p. 132, Sec. 61.

"[5] Without exception, these familiar principles have been applied to zoning ordinances emanating from an authorized police power. Otherwise expressed, a clear abuse of municipal discretion must appear as a predicate for judicial interference. (Citing numerous authorities). To sustain charges that the municipal judgment is arbitrary and unreasonable in its effect upon his property (it is stated in King v. Guerra, supra [Tex.Civ.App., 1 S.W.2d 373, 376]), '* * * the extraordinary burden rests upon appellee to show that no *conclusive*, or even *controversial* or issuable, facts or conditions existed which would authorize the governing board of the municipality to exercise the discretion confided to it by a valid ordinance in determining a matter of purely governmental policy. * * * So, if it can be said that the evidence in this case raised the issue of the truth of any of the material facts upon which the board refused a permit, then a sufficient answer is that the board were the triers of those facts,

and their finding was conclusive and may not be substituted by the finding of a jury'. (Italics ours)

"* * * where, as here, the matters in controversy have been submitted to a jury, appellees thereby concede the existence of issuable facts. And, 'If reasonable minds differ as to whether or not a particular restriction has a substantial relationship to the public health, safety, morals or general welfare, the restriction must stand as a valid exercise of the police power.' City of Corpus Christi v. Jones, supra [Tex.Civ.App., 144 S.W.2d 388, 399]."

The judgment of the trial court enjoining enforcement of the regulations of the ordinance was reversed and judgment rendered dissolving the injunction. The logic of this opinion seems to us unanswerable. However, in Weaver v. Ham, Tex.Sup., 232 S.W.2d 704, the Supreme Court on the basis of fact findings by the trial court, sustained the conclusion of that court that the ordinance there involved was invalid. If the Supreme Court in Weaver v. Ham held that the evidence raised debatable issues, the determination of which would decide that the ordinance was valid or invalid, then we cannot reconcile such holding with the Lively case. Here the trial court has held, not that the evidence raised issues of fact the determination of which would bear on the invalidity of the ordinance, but that the evidence showed its invalidity as a matter of law. In this view we do not concur for the reasons stated in our original opinion. We do not hold that the evidence raised issues the determination of which would have warranted the conclusion that the ordinance was invalid. That question is not before us. Our holding is limited to the proposition that the evidence did not show the ordinance invalid as a matter of law. On another trial the evidence may show its invalidity as a matter of law, or raise issues a determination of which will be a basis for such holding.

The motions are overruled.