DRISKELL et al. v. BOARD OF ADJUST-
MENT et al.

No. 14782.

Court of Civil Appeals of Texas, Fort Worth

June 7, 1946.

Rehearing Denied July 5, 1946.

W. A. Hawkins, of Fort Worth, for appellants.

R. E. Rouer, and Heard L. Floore, both of Fort Worth, for appellees.

SPEER, Justice.

Joe Driskell and H. S. Newton, resident tax-paying citizens of the City of Fort Worth, as plaintiffs, brought this action against Preston M. Geren, Lacy Boggess, Robert C. Jenkins, H. C. Nowlin and Berl E. Godfrey, members of the Board of Adjustment of the City of Fort Worth, and the City of Fort Worth, a municipal corporation, as defendants, in the 48th District Court of Tarrant County, Texas, seeking to set aside a permit to build an orphanage theretofore granted by the above named Board of Adjustment to Lena Pope Home, Inc.

Upon application the trial court issued its writ of certiorari to the Board of Adjustment; the Board made its return in response to the writ, and along with the City of Fort Worth, answered the trial petition of plaintiffs with a special exception to the sufficiency of the petition, and made other special answers which need not be set out here. The trial court sustained the special exception, plaintiffs declined to amend, and the suit was dismissed.

The plaintiffs perfected an appeal and will be referred to by us as appellants and the named defendants will be designated as appellees, except when necessary to refer to the "Board" or the "City" by name.

Omitting conclusions pleaded, the petition in effect sets out that Lena Pope Home, Inc., applied to the Board of Adjustment for a permit to be granted as an exception to the Zoning Ordinance of the City of Fort Worth in a district designated as a two-family residential district to build an orphanage on designated property therein. That the order or ruling of the Board was "illegal, arbitrary, unreasonable and capricious, in that the Board acted under and by virtue of authority conferred upon it by subdivision (3) of section 19 of the zoning ordinance."

The petition then quotes two paragraphs of the zoning ordinance, as follows:

"Jurisdiction: The Board shall hear and decide appeals where it is alleged there is error in any order, requirement, decision or determination made by the Building Commissioner in the enforcement of this ordinance, and it shall have the following powers:

"(3) To permit, after public notice and hearing, the location of any of the following uses in a district from which they are prohibited by this ordinance: Airports, Cemeteries, Community Centers, Greenhouses, Hospitals and Institutions of an Educational or Philanthropic Nature, Libraries, Semi-public Parking Areas and Tourist or Trailer Camps; also Large Scale Neighborhood Housing Projects with multiple dwellings, provided they comply with the height, front and rear yard and lot area of the district in which they are to be located, and in no case cover more than thirty (30) per cent of the buildable area of the site."

Appellants further pleaded that said section 3, quoted above, is illegal in so far as it applies to institutions of a philanthropic nature, such as is involved in this case, for the following reasons. These reasons are summarized in appellants' brief in this language: (1) "That the above quoted portions of the ordinance are void since it is an attempt to confer upon the zoning board (Board of Adjustment) the legislative power to grant a permit to one person according to the fancies of the board members and refuse it to another applicant." (2) "That public safety was involved to such an extent that it would be necessary to close several streets, theretofore dedicated to the use of the public, in the area, to prevent traffic accidents." And (3) "Under subdivision 9 of section 19 of the ordinance, it was provided that the board may 'authorize upon appeal in specific cases such variance of the terms of the ordinance as will not be contrary to the public interest, where owing to special conditions a literal enforcement of the provisions of

the ordinance will result in unnecessary hardship.' "

There are further allegations charging illegality of the order of the Board in granting the permit, because there was no competent evidence adduced to the effect that the enforcement of the ordinance (limiting structures to two-family residences) would result in any hardship.

Additional allegations were made to the effect that granting of the permit and the construction of the orphanage would result in damages to the value of appellants' homes and of those home-owners similarly situated and that a petition and remonstrance against granting the permit, signed by more than 620 resident people, were presented to the Board at its hearing.

The material parts of the special exception urged by appellees to appellants' petition are summarized as follows: It appears from the petition, the record, and the return that the City of Fort Worth is a municipal corporation, incorporated as a Home-Rule city; that prior to the time of the matters here in controversy the City had legally adopted its zoning ordinance No. 2082 in accordance with the existing laws of the State of Texas found in Articles 1011a to 1011j, inclusive, of Vernon's Annotated Civil Statutes; that the Board of Adjustment named in the petition was duly constituted; that after due notice and hearing the Board of Adjustment lawfully granted to Lena Pope Home, Inc., a requested variation in the terms of the ordinance to permit the erection of an orphanage on eight blocks of land (describing them) located in a "B" two-family district; that the proceedings in connection with the granting of said permit were regular; that the Board had the authority, under the ordinance and laws of the state, to do and perform all the acts done in connection therewith. There are no allegations in said petition setting forth any facts to show that the Board acted arbitrarily, capriciously, without reason, or in any other illegal manner; that there are no affirmative allegations in the pleading which negative the facts which would have authorized the action taken by the Board; no allegations that appellants, or any other person represented by them, have suffered any wrong; no allegation that they did not receive notice of the hearing, nor that any duty owing to plaintiffs has been violated, nor that there was any omission of duty by the defendants; it further appears from the face of the petition and the return and transcript that no issuable fact has been raised for judicial determination; that the Board was acting in a truly governmental function; that a controversy was before the Board and that it was determined in a proceeding provided by the laws applicable to such matters.

In addition and subject to the special exception appellees filed an answer admitting and denying many things and attached to the answer as identified exhibits a certified transcript "of the official records on file in the office of said Adjustment Board presented to and acted upon by said Adjustment Board in connection with the hearing and investigation of the petition and appeal of Lena Pope Home, Inc., and Lena Pope for a variance in the terms of ordinance No. 2082 relating to the construction of an orphanage in an area bounded" (describing it). It was further certified that the minutes of the Board are contained in the compiled exhibits. All this, as we understand it, constitutes the "return" of the Board of Adjustment made in response to the writ of certiorari theretofore issued by the 48th District Court. But, why the "return" was not included in the transcript does not appear. The certified copy of the return, along with a copy of the zoning ordinance, referred to in and copied from, in appellants' petition, marked as an exhibit, all came up to this court with the record in special enclosures of exhibits, and in this way they are before us without objection by appellants.

The case reached the district court on certiorari under fifth paragraph of section 3 of article 1011g, Vernon's Texas Civil Statutes. In the seventh paragraph under the same section of that article, it is provided: "If upon the hearing (in the district court) it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence * * * upon which the determination of the court shall be made. The court may

reverse or affirm, wholly or partly, or may modify the decision brought up for review." We have pointed out this statutory provision because of the language used in the judgment entered. We are not at all certain that the trial court merely sustained a special exception as complained of by appellants.

The order entered by the trial court reads, in part, as follows: "This day came the parties by their attorneys, and then came on to be heard the defendants' special exception to the plaintiffs' first amended original petition *and the return,* and after a hearing and the argument of counsel it is the opinion of the court that the law is for the defendants, that no cause of action has been stated and that there is no necessity for any testimony, and the plaintiffs declining to amend, it is therefore ordered, adjudged and decreed * * *." (Added emphasis is ours.) While plaintiffs' petition did not contain, by reference or otherwise, the return of the Board, it is apparent that it was considered by the trial court in passing upon the sufficiency of the pleadings.

The first point relied upon by appellants reads: "The error of the court in sustaining defendants' special exception, the second paragraph in their answer (the equivalent of a general demurrer.)" There are seven other points set out in their brief, but they are admittedly subdivisions of or related so closely to the one above quoted that they are brought forward to this court to better enable us to understand appellants' several contentions.

In their briefs, appellants with commendable frankness say, "But one question actually exists in the case and that is whether the court erred in sustaining the special exception of the defendants and dismissing the case without a hearing."

The authority given to the City of Fort Worth to provide designated districts for the construction and maintenance of buildings is found in Articles 1011a to 1011h, inclusive. Article 1011g is more especially applicable to the matters involved here. By that article the City could select a Board of Adjustment and in doing so could provide "that the said board of adjustment may, in appropriate cases and subject to appropriate conditions and safeguards, make special exceptions to the terms of the ordinance in harmony with its general purpose and intent and in accordance with general or specific rules therein contained."

The same article provides that the Board may, in specific cases, allow such variances from the terms of the ordinance as will not be contrary to the public interest, and where a literal enforcement of the ordinance will result in unnecessary hardship, and so that the spirit of the ordinance shall be observed and subtantial justice done.

A subsequent paragraph of that article provides for appeal to the court by certiorari by persons dissatisfied with the Board's order; that the petition to the court shall be duly verified, "setting forth that such decision (of the Board) is illegal, in whole or in part, specifying the grounds of illegality." That article also provides for the return of proceedings had by the Board to be sent to the court in response to the writ of certiorari and for the manner of proceedings to be had by the court.

The legislative body of the City passed Zoning Ordinance No. 2082, which in its nature is very elaborate and comprehensive. The ordinance divided the city into zoning districts numbered or lettered from "A" to "K", both inclusive. District "A" was potentially limited to one-family residences and district "B" was known as a two-family residential area. District "B", only, is involved in this case. In creating the "B" district, section 4 of the ordinance provides that no building shall be constructed in that area other than those therein designated, "unless otherwise provided in this ordinance." By the quoted language we may look to subdivisions 3 and 9 of section 19 of the ordinance to ascertain if the ordinance did "otherwise provide."

Section 19 of the ordinance created the Board of Adjustment and defines its duties, power and authority. Under the heading "Jurisdiction," subdivision (3) provides the board may permit, after public notice and hearing, the location of any of the following uses in a district from which they are

prohibited by the ordinance * * * institutions of an educational or philanthropic nature * * *."

Subdivision (9) of section 19 of the ordinance is in substantially the same language of the statutory provisions above pointed out with reference to the allowance by the board of variance and non-conforming structures under the conditions and circumstances there set out.

The Lena Pope Home, Inc., an orphanage, is admitted by appellants to be "an institution of a philanthropic nature." The Board in the exercise of its discretion, under authority of the statute and the ordinance, decided to and did grant the permit, and it is from that decision appellants have appealed under and by virtue of the statutory provisions above pointed out. We have already shown that the only thing appellants can litigate under the statutory appeal is the legality of the decision of the Board of Adjustment. To entitle one to contest such decision he must plead the illegality of the order and specify the grounds upon which it is illegal.

Appellants in this case alleged, in effect, that the ordinance of zoning was illegal in so far as it attempted to give to the Board authority to make variance from the general purpose of the ordinance, because it thereby conferred upon the board power to grant a permit to one person and deny it to another, according to its own desires, and because public safety was involved, and to grant the permit certain streets and alleys would have to be closed. Of course if the ordinance was illegal, any decision made thereunder by the Board would necessarily be illegal.

The statutory provisions authorizing a zoning into districts by municipalities, as found in Articles 1011a to 1011j, supra, have many times been upheld by our courts. A reading of the various opinions indicates that the larger cities have adopted substantially similar zoning ordinances to the one now under consideration.

■ In Scott v. Champion Building Co., Tex.Civ.App. 28 S.W.2d 178 and Lombardo v. City of Dallas, Tex.Civ.App., 47 S.W.2d 495, the Dallas Court of Civil Appeals gave an elaborate discussion of the validity of the zoning ordinance of the City of Dallas. In the last cited case a writ of error was granted and the Supreme Court, speaking through Chief Justice Cureton, as was the custom of the great jurist, literally exhausted the subject and approved the holdings of the Dallas court in the two cited cases. They all upheld the validity of the zoning ordinance in issue. We have concluded that no allegations were made in the trial petition of this case which could be construed to specify reasons for the illegality of the ordinance of the City of Fort Worth.

If the petition can be sustained at all, it must be upon the ground that the decision of the Board was illegal, because it was "arbitrary, unreasonable and capricious." Appellants alleged that the Board acted under subdivision 3 of section 19 of the ordinance. There, the jurisdiction of the Board is defined, in part, as that under certain conditions and limitations the Board could grant a permit to build an institution of a philanthropic nature in a district from which it was otherwise prohibited.

■ We may here observe that notwithstanding the fact that the zoning ordinance purported primarily to allow only structures of a certain kind and limited to specified uses in given districts, yet when we read the ordinance as a whole these restrictions are each and all subject to the limitations placed thereon by said "section 3" conferring upon the Board authority to make variance from the ordinance, setting out therein to what extent variances and non-conforming structures could be allowed by the Board. Hence it cannot be said that those to be allowed by the Board were strictly prohibited. They were in fact permitted, if within the discretion of the Board; under its limitations it did not destroy the effect of the ordinance creating the district.

The decisions of the Board is attacked as being illegal because the ordinance does not specify any test by which the Board may be guided in determining if one of the institutions named in the ordinance may be permitted within one of the districts potentially set apart for another purpose, and that thereby the Board is left to the whims and fancies of its members to permit one

applicant a variance to the ordinance and deny that right to another person, and is an attempt to confer legislative power on the Board of Adjustment.

██ Appellants argue, and rightly so, that the legislative body of the city cannot delegate to the Board power to create zoning districts, but that this must be done by the city authorities. Citing Harrington v. Board of Adjustment, Tex.Civ.App., 124 S.W.2d 401, writ refused, and City of Amarillo v. Stapf, 129 Tex. 81, 101 S.W.2d 229.

In the Harrington case, supra, the Board of Adjustment granted a permit to an applicant to erect a filling station in an area "zoned" as strictly residential. The decision was contested in a certiorari proceeding in the district court. That court affirmed the decision of the Board and the Court of Civil Appeals reversed and rendered the case. The appellate court drew a distinction between the provisions of law, giving the Board authority to allow "exceptions" and authority to grant a "variance" to the provisions of the ordinance. A filling station was not one of those institutions the municipality had authorized the Board to make a variance in favor of, and that to allow such a "variance" would be to permit the Board to create or change the districts as created by the municipality under the statute, and held this could not be done. The opinion was on certified questions and the detailed answers reflect what we have indicated. The Stapf case, supra, involved the erection of a foundry in a district other than that provided by the ordinance, and it was held that the Board had no discretion to grant such permit, since the ordinance did not confer any authority to make variances except where specially provided by the ordinance—that the Board could not, at its discretion, create or change the districts and their limitations as made by the municipality.

Appellants cite City of Sherman v. Simms, Tex.Sup., 183 S.W.2d 415. As we construe that opinion, it lays down the general rule that in an effort to create zoning districts the city acts in a governmental capacity, and is confined in its acts to those which tend to promote health, safety, morals, or the general welfare of the community; that the denial of the right to construct a church for religious worship does not fall within the rights of a city in passing a zoning ordinance which would exclude such an institution. That, too, is beyond the question we have before us.

██ In the instant case we are to find, if we can, whether appellants have alleged specific facts which would render the decision of the Board unreasonable, arbitrary and capricious. The Board granted the permit as a variance from the terms of the ordinance, based upon the evidence before it; the permitted institution is one specifically mentioned in the ordinance which could be permitted under named conditions. We do not believe the decision was void for unreasonableness. Was the decision arbitrary? In some instances "arbitrary" means, "one's will or discretion," again, "fixed or arrived at through will or caprice; decisive but unreasoned." Appellants refer to the decision as being arbitrary because it was left to the whims and personal desires of the members of the Board, by which they could allow such to one person and deny it to another. It must be conceded that the granting of the permit is within the sound discretion of the Board after weighing all the surrounding facts and circumstances, taking into consideration the legal curb invoked by the ordinance made to avert an abuse of that discretionary power.

██ It is the universally settled rule that in cases of this character where matters of discretion are committed to boards, commissions, and other ministerial bodies, created as an arm or branch of the governing body, a clear abuse of that discretion must appear before the courts will set the act aside; also that the burden of proof is upon one who attacks such discretionary matter to show that a clear abuse has been perpetrated; that a court may not substitute its own discretion and choice for that of such board, commission or other ministerial body, and the only question that can be raised on appeal from the Board of Adjustment is the legality of the decision of the Board. Connor v. City of University Park, Tex.Civ.App., 142 S.W.2d 706; City of Dallas v. Lively, Tex.Civ.App., 161

S.W.2d 895, writ refused; City of San Angelo v. Boehme Bakery, Tex.Sup., 190 S.W.2d 67; King v. Guerra, Tex.Civ.App., 1 S.W.2d 373, writ dismissed.

City of University Park v. Hoblitzelle, Tex.Civ.App., 150 S.W.2d 169, by the Dallas Court of Civil Appeals, apparently was in form of a mandamus proceeding to compel the city to issue a permit for applicant to build a business house in a residential district. It appears that applicant was denied the permit to build by the Board of Adjustment and the suit for mandamus was instituted, perhaps not in conformity to the provisions of Article 1011g, Vernon's Texas Civil Statutes. The trial court gave the coveted relief and the Court of Appeals reversed and rendered judgment denying the relief sought, based largely upon the decision of the Board of Adjustment. It was there held that whether or not the ordinance was reasonable and whether the power conferred on the board, a governmental agency of the city, was exercised arbitrarily or not, is for the courts to determine as a matter of law; that a jury verdict that the actions of the city authorities were unreasonable or arbitrary could not justify the trial court's judgment directing the issuance of a permit.

■ Counsel for all parties admit there are no decided cases directly in point on the particular question at issue here. We have been unable to find any, other than those above mentioned and some cited by counsel, which are applicable in some respects. We have mentioned some cases which were tried to courts and juries, but none were disposed of upon the pleadings, as was done in the instant one. However it is fundamentally true that generally, absent certain exceptions not involved here, a plaintiff must plead a state of facts which if established would entitle him to recover.

The decision of the Board is attacked because the ordinance furnishes no test or criterion by which the Board is to be governed in allowing variances. In the very nature of such statutory laws the basic rule must be flexible enough to allow the legislative body of the municipality a certain amount of discretion in zoning cities to take care of unforeseen instances as they arise. Not unlike our constitutional provisions, the general ground-work is laid authorizing legislative bodies to enact such laws that will effectuate the general purpose, but at the same time, inhibits the legislative body to pass laws in conflict therewith. Applicable to this principle, the Legislature created the Game, Fish and Oyster Commission and gave it authority to promulgate rules and regulations for catching fish, etc. That Commission's rules were attacked because the Legislature had delegated to it powers to make and enforce its rules and edicts. The appellate courts have upheld such rules and regulations upon the basis that the law creating the Commission must be flexible enough to allow to the Commission a certain amount of discretionary power, and upheld the legislative act. Tuttle v. Wood, Tex.Civ. App., 35 S.W.2d 1061, writ refused.

The special exception presented by appellees is very full and meticulously points out intelligibly and with particularity the defect, omission, obscurity and deficiencies in appellants' petition excepted to.

■ Eliminating those parts of the petition which are mere conclusions of the pleader, the special exception points out that the petition does no more than allege that the zoning ordinance was legally passed by the City; that the Board of Adjustment scrupulously followed the provisions of the ordinance, had a hearing, heard evidence, and exercised its discretionary powers conferred on it and issued the permit as a variance to the restrictions named in the ordinance in the area involved. The trial court reviewed the pleadings and return of the Board and found that no issuable facts were presented and sustained the exception.

A careful review of the entire record and a study of the applicable law leads us to the definite conclusion that no reversible error is shown. We therefore affirm the judgment of the trial court.