KENNY et al. v. KELLY et al.
No. 12476.

Court of Civil Appeals of Texas.
San Antonio.
Jan. 21, 1953.

———◆———

Dobbins & Howard and Parker, Smith & Rice, San Antonio, for appellants.

Carl Wright Johnson, Edward P. Fahey, Eskridge, Groce & Hebdon, Harvey L. Hardy and C. J. Matthews, San Antonio, for appellees.

NORVELL, Justice.

Joseph T. Kenny and approximately fifty other landholders in the vicinity, sought to enjoin W. A. Kelly, doing business as Kelly Construction Company, the City of San Antonio, and Guy A. Thompson, trustee in bankruptcy for the International-Great Northern Railroad Company, from constructing or permitting the construction of a spur railroad track onto New City Block 7301 of the City of San Antonio, and from recognizing as valid a 1949 amendment of the City's zoning ordinance removing said Block No. 7301 from a "B" residential zone and placing the same in a "J" commercial classification.

After a hearing before the court without a jury, judgment was rendered denying plaintiffs all relief prayed for and decreeing

that they take nothing. Findings of fact and conclusions of law were requested and filed.

For a better understanding of the court's findings we reproduce here a portion of an aerial photograph of the area involved (which was introduced in evidence), upon which we have superimposed block lines and numbers, as well as the boundary lines separating the "B" residential zone from the "J" commercial zone in the area. The heavy solid lines (which exclude Block 7301) indicate the "J" commercial zone in the area, according to the ordinance of July 2, 1942. The broken lines on the east and south boundary lines of Block 7301 indicate the change made in the ordinance by the City Council of the City of San Antonio on May 26, 1949, whereby Block 7301 was removed from the "B" residential to the "J" commercial zone. The plat follows:

■ The trial judge's findings of fact (paraphrased slightly) read as follows:

1. During the year 1936, W. A. Kelly acquired New City Blocks 8565, 7301 and 8566, in San Antonio, Texas.

2. Since 1936 to the present time, Kelly has continuously used Blocks 8565 and 7301 in conjunction with his construction business, known as Kelly Construction Company, by storing on said Block 7301 materials, road machinery and equipment, constructing and using an unloading pit thereon and washing and cleaning road machinery on Block 7301.

3. In 1936, Blocks 8565 and 7301 were outside of the city limits of the City of San Antonio, Texas; at such time the city limit line of the City of San Antonio ran east and west through the middle of New City Blocks 6555 and 6556, which blocks are adjacent to and immediately south of Blocks 8565 and 7301.

4. On November 3, 1938, the City of San Antonio enacted a comprehensive zoning ordinance which zoned the south halves of Blocks 6555 and 6556, together with an area to the south of these blocks, as zone "B" residential, except for a few small exceptions which were zoned "D" apartments and "J" commercial.

5. On May 31, 1941, the City of San Antonio annexed a large area to the north of the 1938 city limits line, which included Blocks 8565 and 7301 owned by Kelly, together with other property being used for commercial purposes.

6. On July 2, 1942, the City of San Antonio passed an amendment to the zoning ordinance by virtue of which the north halves of Blocks 6555 and 6556 were zoned "B" residential, and all of the property north of Blocks 6555 and 6556 to Olmos Drive was zoned "J" commercial, except Block 7301, which was zoned "B" residential.

7. On July 2, 1942, Kelly did not have knowledge that his Block 7301, which was then being used for commercial purposes, was being zoned "B" residential.

8. On April 19, 1949, Kelly petitioned the Zoning Commission of the City of San Antonio, Texas, to amend the zoning ordinance and reclassify Block 7301 as "J" commercial to make it conform to the area in which it is located and to correct an obvious error made by the City of San Antonio in the July 2, 1942, amendment to the zoning ordinance.

9. All notices concerning said petition and proposed amendment then required by law were given, and all hearings then required by law in conjunction with the same were held. Thereafter, on the 26th day of May, 1949, the City Commission of the City of San Antonio passed an ordinance amending its basic zoning ordinance whereby Block 7301 was reclassified from "B" residential to "J" commercial.[1]

1. Appellants attack the trial court's ninth finding, containing the statement (in the nature of a conclusion) that all notices then required by law were given. They rely upon the case of Tonroy v. City of Lubbock, Tex.Civ.App., 242 S.W.2d 816, which was controlled by the amendment of Article 1011f, Vernon's Ann.Tex. Stats., which became effective March 3, 1949. This Article, prior to amendment, reads as follows:

"Art. 1011f. Zoning commission. In order to avail itself of the powers conferred by this Act, such legislative body shall appoint a commission, to be known as the Zoning Commission, to recommend the boundaries of the various original districts and appropriate regulations to be enforced therein. Such commission shall make a preliminary report and hold public hearings thereon before submitting its final report, and such legislative body shall not hold its public hearings or take action until it has received the final report of such commission. Where a city plan commission already exists, it may be appointed as the Zoning Commission."

By the amendment the following specific provision as to notice was added:

" * * * Written notice of all public hearings on proposed changes in classification shall be sent to all owners of property, or to the person rendering the same for city taxes, affected by such proposed changes of classification and to all owners of property, or to the person rendering the same for city taxes, located within two hundred (200) feet of any property affected thereby within not less than ten (10) days before any such hearing is held. Such notice may be served by depositing the same, properly

10. Block 7301 is in a commercial district and is wholly unsuitable for use as a residential subdivision, except at an economic loss. It is bounded on the north by commercial property and on the south by residential and rent property and the only means of ingress and egress to said block is from the east and west.

11. The main line of the International-Great Northern Railroad Company cuts through the northwest corner of Block 6555 and through the west one-fourth of Kelly's Block 8565. About 1937 Kelly caused a spur track to be built from the main line of the International-Great Northern Railroad onto the north portion of his Block 8565 for use in connection with Kelly Construction Company.

12. Prior to the institution of this suit, Kelly caused said spur track to be extended across Belknap Street onto the north portion of Block 7301 for a distance of five or ten feet and after the filing of this suit caused same to be completed across the north part of Block 7301. Said spur track is now being used in connection with the business of the Kelly Construction Company.

Appellants' primary contention is that the ordinance of July 2, 1942, which constitutes the basic zoning regulation applicable to the property involved was a valid municipal regulation of the City of San Antonio and fixed the pattern of particular uses permitted in the area; that the 1949 action of the City Council removing Block 7301 from the "B" residential zone and placing it in the "J" commercial zone, was wholly invalid, as such action was arbitrary and taken for the purpose of benefiting one person, W. A. Kelly, to the detriment of a large group of individuals who had built homes and invested their money relying upon the basic zoning ordinance. As supporting this position, appellants cite Weaver v. Ham, Tex.Sup., 232 S.W.2d 704, 709 decided in 1950, wherein the Supreme Court held that an amendment of a basic zoning ordinance arbitrarily transferring a small designated area from one zoning classification to another to the prejudice of adjoining landowners and bearing no substantial relationship to the public health, safety, morals or general welfare constituted "unjustifiable spot zoning" and could be declared void upon suit of affected landowners.

A perusal of the cases relating to so-called "spot zoning" indicates that determination of the validity of the ordinance in dispute (generally an amendatory regulation) depends upon the circumstances of each case and the character of the regulations involved. Annotation, 149 A.L.R. 292, 293. For this reason, we have examined the evidence and are of the opinion that the trial judge's findings are supported thereby.

The suit is aptly referred to as a "perimeter case" in appellees' brief, in that under the 1942 ordinance Block 7301 was placed upon the boundary of the "B" residential zone, with "J" commercial areas to the north and west. Further, at the time the ordinance was adopted in 1942, said Block 7301 was subject to a non-conforming use, which incidentally was open and obvious to all caring to investigate. The ordinance of the City relating to such uses provides that:

"The lawful use of land existing at the time of the passage of this ordinance, although such use does not conform to the provisions hereof, may be continued; but if such non-conforming use is discontinued, any future use of said premises shall be in conformity with the provisions of this ordinance."

Since 1936, Kelly has used Block 7301 in conjunction with his business for the

addressed and postage paid, in the city post office."

We agree with the trial court that the provisions of Article 1011f, as it existed prior to the amendment, are applicable to this case, as proceedings in accordance with the existing statute and the city charter relating to the proposed change in the zoning ordinance were already underway on May 3, 1949, when the statutory amendment became effective. There is nothing in the amendment of Article 1011f (which became effective on May 3, 1949) indicating that the Legislature intended that such amendment should have a retroactive effect. Rockwall County v. Kaufman County, 69 Tex. 172, 6 S.W. 431; Blakely v. Commercial Union Assurance Co., Tex.Civ.App., 160 S.W. 443.

purpose of storing materials used in the construction business. Under the ordinance and the law he may continue this use. City of Corpus Christi v. Allen, Tex.Sup., 254 S.W.2d 759. He is not restricted to 1942 conditions or status as to the amounts of materials stored and handled upon his property, nor to the methods employed. The fact that improved and more efficient instrumentalities are utilized in pursuit of the use does not render the same unlawful. Appeal of Haller Baking Company, 295 Pa. 257, 145 A. 77; Building Commissioner of Medford v. McGrath, 312 Mass. 461, 45 N.E.2d 265; Town of Marblehead v. Rosenthal, 316 Mass. 124, 55 N.E.2d 13. Cf. De Felice v. Zoning Board of Appeals, 130 Conn. 156, 32 A.2d 635, 147 A.L.R. 161, wherein an improved method of treating sand was enjoined as it amounted to a change in use, i. e., from the mere taking of sand to the treating of sand upon the premises so as to enhance its commercial value.

There is no showing here that the railway spur would operate to change the use of the block, and as long as it did not do so, Kelly could operate the same by virtue of his right to pursue a non-conforming use upon Block 7301.

We are not here concerned with a lot or block which has formerly been devoted to no use or to a residential use, but with a tract which for thirteen years has been used for purposes essentially commercial in nature. This in itself is a strong indication that the Block in question will not become residential in character, but that the non-conforming use will in all probability continue. This is further brought out by details of the evidence. There are no streets or passageways on either the north or south boundary lines of Block 7301. Its depth from north to south is 192.6 feet. A fifty-foot street through the center of the block would make two sets of lots on either side less than 72 feet in depth, which is admittedly an undesirable size for residence purposes and, according to the testimony, would not meet the loan requirements of the Federal Housing Administration.

Another possible but hardly satisfactory residential use of the property was suggested by counsel upon cross-examination of Kelly, viz.:

"Q. How wide is that property from the north to the south? A. 192½ feet, sir.

"Q. Well, you could put a 42½ foot street on the south end of it, and have 150 foot lots from the north to the south, couldn't you, and face them south? A. Face them south right into somebody's back yard?

"Q. Well, that is done, isn't it? A. Not that I know of.

"Q. You don't know whether that is done? A. Well, it is not good business, is it?"

The evidence further discloses that should a street be placed along the north boundary line of Block 7301, houses built thereon would face warehouses and other commercial structures.

Under the findings of the trial court, we are of the opinion that the City Council acted within the legitimate scope of its discretion in transferring, so to speak, Block 7301 with its non-conforming use, from the residential to the commercial zone. The Block was unsuitable for residential purposes in 1942 and in 1949. The City Council in passing the amended ordinance in 1949 may have considered that a mistake was made in 1942, when Block 7301 was classified as residential property, or it may have considered that the same was probably irrevocably devoted to commercial purposes (in 1949) and should be so classified by the zoning ordinance. Under either theory, it could not be said that the action of the City Council was arbitrary or unreasonable. City of Dallas v. Lively, Tex.Civ.App., 161 S.W.2d 895, wr. ref.; Edge v. City of Bellaire, Tex. Civ.App., 200 S.W.2d 224, wr. ref.; Driskell v. Board of Adjustment, Tex.Civ.App., 195 S.W.2d 594; Taylor v. Schlemmer, 353 Mo. 687, 183 S.W.2d 913; Eggebeen v. Sonnenburg, 239 Wis. 213, 1 N.W.2d 84, 138 A.L.R. 495; Chayt v. Maryland Jockey Club, 179 Md. 390, 18 A.2d 856. The distinction between the present case and that

of Weaver v. Ham, Tex.Sup., 232 S.W.2d 704, is well illustrated by the opinion in DeBlasiis v. Bartell, 14 Pa.Super. 485, 18 A.2d 478, 482, wherein the case of Huebner v. Philadelphia Savings Fund Society, 127 Pa.Super. 28, 192 A. 139, is distinguished from that of Hollearn v. Silvermand, 338 Pa. 346, 12 A.2d 292.

Appellants' brief does not disclose a reversible error, and the judgment appealed from is accordingly affirmed.