**W. R. GODDARD et al., Appellants,**

v.

**Charles K. STOWERS et al., Appellees.**

**No. 14865.**

Court of Civil Appeals of Texas.

Dallas.

Oct. 8, 1954.

Rehearing Denied Nov. 5, 1954.

A. J. Thuss, Jr., Dallas, for appellants.

Leake, Henry, Golden & Burrow and Duncan Boeckman, H. P. Kucera, City Atty., and Ted P. MacMaster, Asst. City Atty., Dallas, for appellees.

YOUNG, Justice.

By Amendatory Ordinance No. 5760, of date April 7, 1953, the City of Dallas had changed the classification of the Stowers property (subject to a recognized nonconforming use) from residential to local retail; its validity being challenged by appellants in petition for injunction as unreasonable and arbitrary, having no relationship to public health, safety, convenience, or general welfare; in effect amounting to unjustifiable spot zoning. Upon hearing to the court, the measure was adjudged legal and valid; with denial of restraint and order that petitioners Goddard and Maxson take nothing. The appeal seeks a review of such adverse judgment. Background of the controversy, both in locale and subject matter involved, must first be stated.

In 1939 appellee Stowers had purchased the property so rezoned, approximately an acre of land and described as the northwest Lot lying at intersection of Northwest Highway, an east and west thoroughfare, and Midway Road, running generally north and south; erecting thereon a grocery store and filling station (oil and gas); in 1946 adding some grease racks. When acquired, the vicinity was undeveloped, with only farmhouses to the north on Midway. At time of purchase, the Stowers Lot faced 231 feet on Northwest Highway, 315 feet along Midway Road, and was outside the Dallas city limits. During the year 1943, the particular section, inclusive of the Stowers property, was annexed to the City; his business spot being then in active operation, representing an investment of some $18,000 and becoming a nonconforming use in connection with the residential classification affixed to such area. This residential status was carried forward in comprehensive City Ordinance No. 5238 passed August 28, 1951, Stowers continuing aforesaid commercial use of his property.

In the meanwhile, the entire northerly section of Dallas had undergone a tremendous change, with hundreds of houses built in the vicinity of the Stowers property, vehicular traffic on the two Highways, Northwest and Midway, likewise greatly increased and a City traffic light there installed. Accordingly in October 1951, Stowers made application to the City Plan Commission for a change in zoning of his Lot to local retail 2. This request after public hearing was denied, that body suggesting, however, that the application for a one-story masonry extension of his existing nonconforming use be referred to the Board of Adjustment. The latter agency on hearing denied the request; the Plan Commission then forwarding the original petition for zoning change to City Council, which body, after another hearing in January 1953, deferred action, with request to the Adjustment Board that it reconsider the application. Upon such reconsideration of the case by that Board and further public hearing, appellee Stowers was granted the relief sought; appellants Goddard and Maxson filing suit in District Court for writ of certiorari, Art. 1011g, V.A.C.S., to set aside this Board order. And the City Council, on March 24, 1953, having finally acted on the application for rezoning, granting to Stowers a local retail

2 classification, the ordinance under attack was passed; plaintiffs amending their petition in form of the instant suit.

The homes of appellants, acquired long subsequent to appellee's purchase, lie to the southeast on Northwest Highway, setting back some one hundred feet from the roadway, the other three intersecting corners of Midway and Northwest Highway being vacant. Here it should be noted that in conjunction with enactment of the amended ordinance, Stowers had donated to the City 36 feet at his corner for lessening of traffic hazards, also a 20-foot strip along Midway for widening purposes, confining his entrance way to such street. The prima facie case of appellants consisted largely of exhibits reflecting actions of the various municipal bodies leading up to amended ordinance No. 5760. Testimony of their witnesses had no particular bearing on allegations of arbitrary, unreasonable, and discriminatory conduct on part of the Council[1]; the statement of Mr. Maxson that the ordinance in question would have the effect of depreciating the value of his property being merely offered for purpose of establishing a justiciable interest.

■ "It will be presumed, in the absence of a clear showing to the contrary, that the governing body had sufficient reason, in view of local conditions, to make the classification which they have made; and if there could have existed a state of facts justifying the classification or restriction complained of, the courts will assume that it existed. * * * Otherwise expressed, a clear abuse of municipal discretion must appear as a predicate for judicial interference. [Citing authorities.]" City of Dallas v. Lively, Tex.Civ.App., 161 S.W.2d 895, 898. And contrary to the position of appellants, the record amply discloses such change of neighborhood conditions as to warrant the particular reclassification of property. Appellee Stowers testified that since 1951, the Walnut Hill Shopping Center had been developed a mile to the west on Northwest Highway; to the north on Midway another business section; with existing commercial establishments to the east and south a similar distance away. "The fact that a comprehensive zoning ordinance establishes here and there small commercial districts where stores can be maintained within comparatively short distances from the residential districts established by the ordinance does not make it irrational or discriminatory, since the stores to be found in such isolated commercial districts, of easy access to the dwellers in the near-by residential districts, serve a distinct and insistent commercial social need." 58 Am.Jur., p. 966; Village of Euclid, Ohio v. Ambler Realty Co., 272 U.S. 365, 47 S.Ct. 1114, 71 L.Ed. 303, 54 A.L.R. 1017; State of Washington ex rel. Seattle Title Trust Co. v. Roberge, 278 U.S. 116, 49 S.Ct. 50, 73 L.Ed. 210, 86 A.L.R. 659; Arverne Bay Construction Co. v. Thatcher, 278 N.Y. 222, 15 N.E.2d 587, 117 A.L.R. 1117. "In changing zoning classification of territory after construction of main arterial highway, city council could properly consider not only welfare of inhabitants of city, but convenience and welfare of traveling public using such highway." McNutt Oil & Refining Co. v. Brooks, Tex.Civ.App., 244 S.W.2d 872, 873, syl. 4. See also Skinner v. Reed, Tex.Civ. App., 265 S.W.2d 850.

■ Neither do we have here a case of unjustifiable spot zoning; the issue being raised ostensibly by appellants but not in fact. (Footnote 2). Defendant governing body has simply decided that in view of the great increase of population in vicinity of the named Highways, especially since

1. These witnesses were: Frank Spacek, Assistant City Secretary; Marvin Springer, City Plan Engineer; Don Pickle, Secretary, Dallas Board of Adjustment; and Jno. S. Maxson, a plaintiff.

2. "The term 'spot zoning' is ordinarily used where a zoning ordinance is amended reclassifying one or more tracts or lots for a use prohibited by the original zoning ordinance and out of harmony therewith." Yokley on Zoning, 2nd Ed., Vol. 1, p. 202.

1951 (date of last comprehensive ordinance), that the Stowers location and nonconforming use should be legalized; in other words, affixing to the lot a Retail 2 classification by name, just as it had been in fact from the beginning; a determination manifestly within its province and discretion as found by the trial court. "* * * The reclassification of certain property for a use different from that of the surrounding area is not invalid where such property was subject to a nonconforming use, the effect of which was the same as though the property had been originally classified for the use to which it was subsequently changed. * * *" 62 C.J.S., Municipal Corporations, § 226(12), p. 468. Kenny v. Kelly, Tex.Civ.App., 254 S.W.2d 535; and see Chayt v. Maryland Jockey Club of Baltimore City, 179 Md. 390, 18 A.2d 856, 858, where the Jockey Club's nonconforming use was thus regularized by amended ordinance, the court going on to say: "For the most part the other properties were under the terms of the original Zoning Ordinance classified as a residential use district, but under the provisions of paragraph 11, Ordinance No. 1247, the Maryland Jockey Club continued to use its properties as previously, because they were subject to a non-conforming use. * * * It is thus seen that while that ordinance in general classified the property of the Maryland Jockey Club as a residential use district, yet the effect of paragraph 11 was such as to place it in a first commercial classification, and this being true we have the same result as if it had originally been classified as a first commercial use district. Upon these considerations, we conclude it unnecessary to express an opinion upon the validity of 'spot' zoning, because that question is not here presented."

All points advanced by appellants are severally overruled with affirmance of the judgment under review.