**Harry THOMPSON et al., Appellants,**

v.

**CITY OF PALESTINE, Appellee.**

**No. 714.**

Court of Civil Appeals of Texas, Tyler.

Oct. 25, 1973.

Rehearing Denied Nov. 29, 1973.

Paxton, Whitaker & Parsons, Melvin D. Whitaker, Palestine, for appellants.

A. D. Henderson, Palestine, for appellee.

DUNAGAN, Chief Justice.

This is an appeal from a judgment rendered in behalf of the City of Palestine upholding the validity of an amendatory zoning ordinance. The appellants are neighborhood property owners who in the initial trial attacked City Ordinance No. 36–72. Ordinance No. 36–72 is an amendatory zoning ordinance passed in 1960 and rezoned the area of property in question. The trial court, sitting without a jury, denied all the relief that the plaintiffs had sought and gave judgment to the City, the appellee herein. Appellants duly perfected their appeal.

Appellants' primary contention is that the zoning is illegal and void because it amounted to spot zoning.

Because the facts are somewhat complex, a summary will be necessary to obtain a complete picture of the circumstances leading to this suit. On September 26, 1960, the City of Palestine enacted Ordinance No. 23–60 as its basic comprehensive zoning ordinance. The 1960 comprehensive zoning ordinance had five classifications or types of zones. Two of these zones were residential consisting of one and two family dwellings and multiple family dwell-ings respectively. The southeast quadrant of the City was almost totally zoned residential as in the above two classifications by the 1960 ordinance. The major thoroughfare which transverses this southeast quadrant was Crockett Road. Crockett Road which is also U. S. Highway 287 and State Highway 19, travels in a northerly direction through this residential area. In 1960, and up until 1965, Crockett Road consisted of only two lanes, but subsequently it was widened into a four-lane road with a parking lane on each side. Also commercial-type street lights were added to the highway.

The property in issue is an area 620 feet by 420 feet or approximately 4.1 acres and rectangular in design. It is located at the southwest corner of Crockett Road and Huffsmith Street. Huffsmith Street is an east-west street which intersects Crockett Road from the west. The 4.1 acre tract is found south of the Huffsmith Street and Crockett Road intersection on the west side of Crockett Road. The property itself is a vacant parcel of land, covered by weeds, bushes and tall grass. The area fronting upon Crockett Road is relatively level but as it progresses to the west there is a gradual downward sloping. Backing the property on the west is a row of moderate size houses. To the north is Huffsmith Street and a group of trees which separates the 4.1 acre tract from the residence of one of the appellants in this case. To the east, across Crockett Road, residences are present, but none face the property. To the south there is a small area of undeveloped vacant property. There are residences adjacent to this vacant property. This 4.1 acre tract is generally located in the southwest part of the southeast quadrant of the city. The central business district is located approximately ten blocks to the north past a railroad overpass. Six blocks to the south is another railroad overpass. Residences are found for seven blocks to the north, six blocks to the south, five to six blocks to the west and ten to twelve blocks to the east. No commercial or business property is found within the

area described, with the exception of a church and a small beauty shop. The church is located on the east side of Crockett Road several blocks to the south of the property in question. It existed prior to the passage of the first comprehensive zoning ordinance in 1960. The beauty shop which is operated from a residence is five blocks from the 4.1 acre tract and is located on a side street running into Crockett Road from the east.

The 4.1 acre tract along with a large area surrounding that same property was zoned "residential" by the original comprehensive zoning ordinance of 1960. In 1965, an abortive attempt was made to rezone the property as commercial; however, 'on December 9, 1968, the original comprehensive zoning ordinance was amended by City Ordinance No. 34–68 which had the effect of establishing a new comprehensive zoning plan. The land surrounding the 4.1 acres in question remained residential under the 1968 amended ordinance. The 4.1 acre tract was purportedly rezoned (PD-NS-2), the "PD" being an abbreviation for Planned Development District, and the "NS" standing for Neighborhood Service District. Under this new zone, the property could be used for a number of purposes including commercial pursuits.[1] In July of 1972, the 173rd District Court of Anderson County, in Cause No. 132, styled William Bible, et al. v. City of Palestine, held Ordinance No. 34–68 void insofar as it designated the 4.1 acres south of Crockett Road and Huffsmith Street as "PD-NS-2" on the basis of inadequate notice, and held that the same property was still "residential" under the City's 1960 comprehensive zoning ordinance. On August 17, 1972, the City of Palestine passed Ordinance No. 36–72 once again designating the area as "PD-NS-2." Subsequent thereto the City of Palestine approved plans for the building of a shopping center on the rezoned property. The suit which resulted in this appeal was filed on August 28, 1972. The question to be resolved on this appeal is whether Ordinance No. 36–72 is invalid because of the alleged illegal and unjustified spot zoning as contended by appellants. Judgment adverse to the appellants was rendered on October 25, 1972.

Before we can reach the merits of this case it is necessary to dispose of appellee's motion to dismiss. Because it is apparent from the plaintiffs' first amended original petition that appellants have sought more than just injunctive relief, appellee's motion to dismiss based upon mootness is hereby overruled.

■ There being no findings of fact or conclusions of law filed by the trial court, it must be presumed upon this appeal that the trial court found every disputable fact proposition for the appellee, considering only the evidence favorable to the judgment disregarding all evidence in conflict therewith. North East Texas Motor Lines v. Dickson, 148 Tex. 35, 219 S.W.2d 795, 11 A.L.R.2d 1065 (1949); Quinn v. Dupree, 157 Tex. 441, 303 S.W.2d 769 (1957); Longhorn Flying Club, Inc. v. Dragoo, 464

---

1. A reading of Ordinance No. 34–68, shows that the area designated as "PD–NS," Planned Development District—Neighborhood Services may be used for some of the following purposes: (This list is not all inclusive for there are approximately 101 possible uses.) multi-family dwelling or apartment; art gallery or museum; college or university, hospital, library; public park; electrical substation; gas transmission line and metering station; sewage pump station; telephone business office; country club; golf course; commercial auto parking lot; bakery or confectionery shop (retail); drapery, needlework or weaving shop; laundry or cleaning self-service; offices, professional and administrative; farm or ranch; hotel or motel; trailer camp or mobile home park; amusement, commercial (indoor); theater, other than drive-in; bus station or terminal; gasoline service station; cafeteria; animal clinic or hospital; laundry plant (commercial); paint shop; storage or sales warehouse; certain types of heavy or light manufacturing; boarding or rooming house; office center; civic center and community center; and shopping center on tracts of three acres or more.

S.W.2d 189 (Tex.Civ.App., 1971, writ ref'd n. r. e.); McDonald, Texas Civil Practice, Vol. 4, sec. 16.10, p. 30 (1971).

■ The appellate court must affirm the judgment if it can be sustained on any reasonable theory which can find support in the evidence. Seaman v. Seaman, 425 S. W.2d 339 (Tex.1968); Bishop v. Bishop, 359 S.W.2d 869 (Tex.1962); Longhorn Flying Club, Inc. v. Dragoo, supra.

■ The City of Palestine unquestionably possesses the power to pass comprehensive and amendatory zoning ordinances. This power was given to the legislative body of the cities and incorporated villages by the enactment of Tex.Rev.Civ.Statute, Vernon's Ann., Article 1011a, et seq. The purpose of this legislative delegation was to promote the health, safety, morals or the general welfare of the community. Tex.Rev.Civ.Statute, Article 1011a et seq. The adoption of a zoning ordinance by the city's governing body represents an exercise of this legislative discretion and therefore is presumed to be valid. City of Waxahachie v. Watkins, 154 Tex. 206, 275 S.W.2d 477 (Tex.1955); City of Lubbock v. Whitacre, 414 S.W.2d 497 (Tex. Civ.App., Amarillo, 1967, writ ref'd n. r. e.); Hunt v. City of San Antonio, 462 S.W.2d 536 (Tex.1971); Baccus v. City of Dallas, 450 S.W.2d 389 (Tex.Civ.App., Dallas, 1970, writ ref'd n. r. e.).

The Supreme Court of Texas in City of Waxahachie v. Watkins, supra, citing City of Corpus Christi v. Jones, 144 S.W.2d 388 (Tex.Civ.App., San Antonio, 1940, err. dism.), stated that if reasonable minds may differ as to whether or not a particular zoning ordinance has a substantial relationship to the public health, safety, morals or general welfare, no clear abuse of discretion is shown and the restriction must stand as a valid exercise of the city's police power.

■ The question presented is one of law and not of fact, and in deciding it the court should have due regard "to all the circumstances of the city, the object sought to be attained and the necessity existing for the ordinance." City of Waxahachie v. Watkins, supra.

■ The party attacking the ordinance has the "extraordinary burden" to show that no conclusive or even controversial or issuable facts or conditions exist which would authorize the governing body of the municipality to exercise the discretion delegated to it. City of Waxahachie v. Watkins, supra; City of Irving v. Bull, 369 S. W.2d 60 (Tex.Civ.App., Dallas, 1963, writ ref'd n. r. e.).

■ If there is an issuable fact as to whether the ordinance makes for the good of the community, the fact that it may be detrimental to some private interest is not material. City of Waxahachie v. Watkins, supra; Edge v. City of Bellaire, 200 S.W. 2d 224 (Tex.Civ.App., Galveston, 1947, err. ref'd); City of Lubbock v. Whitacre, supra.

It must be emphasized that it is not this court's function to legislate in areas in which the city has such power. It is this court's duty to affirm actions taken by the city in its legislative role, when there are controversial issuable facts presented which could cause reasonable men to differ. When such facts are presented this court can do nothing but affirm the city's actions. These foregoing rules establish the standard from which we must judge this set of facts and this case.

■■ Appellants complain in their first point of error that the trial court erred in failing to hold Ordinance No. 36–72 void, because the said ordinance constitutes illegal spot zoning. To formulate a precise definition of spot zoning would be infinitely difficult. Perhaps the difficulty has arisen more from judicial use of the term than from the term itself. Many courts have used the expression in a purely descriptive sense, while others use it in a legal sense based upon the conclusion of the court concerning the zoning under attack.

Moreover, the term is used in a mixed legal and descriptive sense thus increasing the confusion. See 51 A.L.R.2d 263 (1957). Generally the term "spot zoning" is used in its descriptive sense illustrating what is condemned. In Antieau, Municipal Corporation Law, spot zoning, sec. 7.27, p. 472 (1972), it is said that spot zoning has frequently been described as a "singling out of one lot or a small area for different treatment from that accorded to similar surrounding land indistinguishable from it in character, for the economic benefit of the owner of that lot or to his economic detriment." In Cassel v. Mayor & City Council of Baltimore, Md., 195 Md. 348, 73 A.2d 486 (1950), the court described a "spot zoning" ordinance as one which singles out a parcel of land within the limits of a use district and marks it off into a separate district for the benefit of the owner, thereby permitting a use of that parcel inconsistent with the use permitted in the rest of the district. These definitions are descriptive. A mixed definition could be that spot zoning is the zoning of a small area, by either a more restrictive or less restrictive designation which is out of harmony with the area which surrounds it, and having no substantial relation to the health, safety, morals, or general welfare of the community. If it can be said that the zoning ordinance has a substantial relation to the above factors, i. e., health, safety, morals, or general welfare then the ordinance cannot be unjustified or illegal "spot zoning." See Eches v. Board of Zoning Appeal of Baltimore County, Md., 209 Md. 432, 121 A.2d 249 (1956); Weaver v. Ham, 149 Tex. 309, 232 S.W.2d 704 (1950).

■ It is therefore incumbent upon the appellants in the instant case to show as a matter of law that Ordinance No. 36–72 has no substantial relation to the health, safety, morals, or the general welfare of the people of Palestine. This is tantamount to a showing that the City of Palestine acted unreasonably and arbitrarily thereby abusing the discretionary power

that it as a city possesses. See Weaver v. Ham, supra.

In Texas spot zoning is generally condemned. Weaver v. Ham, supra; Barrington v. City of Sherman, 155 S.W.2d 1008 (Tex.Civ.App., Dallas, 1941, writ ref'd w. o. m.); Hunt v. City of San Antonio, supra. However, each case appears to be decided by its own particular facts. City of Waxahachie v. Watkins, supra.

In the recent case of City of University Park v. Benners, 485 S.W.2d 773 (Tex. 1972), the Supreme Court of Texas recognized that Article 1011e of the Tex.Rev. Civ. Statutes, although it authorizes periodic changes in zoning regulations, etc., it does not by its terms require a change of conditions as a prerequisite to the exercise of this power. The court said in qualifying its previous statement, "a change in conditions is not necessary if the rezoning ordinance bears a reasonable relation to the general welfare and to an orderly plan of zoning development." If the rezoning bears a reasonable relation to the general welfare, to an ordered zoning plan of development and does not constitute spot zoning, then a change of conditions is not fundamental to the rezoning in the first instance. Baccus v. City of Dallas, 450 S. W.2d 389 (Tex.Civ.App., Dallas, 1970, n. r. e. at Tex., 454 S.W.2d 391). Alternatively then if the above three elements are not met, the amendatory zoning ordinance must be based on issuable or controversial facts, created by sufficiently changed conditions. The Supreme Court in the City of University Park v. Benners case, supra, cited Baccus v. City of Dallas, supra, and authorities therein as a basis for its rationale concerning changed conditions. Two Kentucky court of appeals cases support the reasoning. In Shemwell v. Speck, Ky., 265 S.W.2d 468 (1954), the court said this concerning a Kentucky statute very similar to our Article 1011e:

"* * * KRS 100.420, authorizes amendments or changes 'from time to time' with no requirement of a change of

conditions. We think that a reconsideration or re-examination of the conditions in any area of the city may justify a change in the zoning ordinance as it affects that area, even though there has been no change of conditions in the area since the adoption of the original ordinance.

"The cases in which the courts have said there must be a showing of a change of conditions are cases in which one piece of property, in a particular zoning district, has been singled out and reclassified without there being any apparent basis for distinguishing it from the remainder of the district. * * * In other words, it is only in the 'spot zoning' cases that the question of a change of conditions is involved."

In Leutenmayer v. Mathis, Ky., 333 S.W. 2d 774 (1959), the Kentucky court said:

"The determination having been made that this is not a spot zoning case, it is not necessary, in order to uphold the ordinance, that there have been a showing of a change of conditions * * *. It is sufficient that the ordinance bears a reasonable relation to the general welfare and to an orderly plan of zoning development."

It appears that Texas courts view changed conditions in the same light as do the Kentucky courts. In Hunt v. City of San Antonio, supra, the Texas Supreme Court impliedly, if not expressly, ruled that in cases of spot zoning a finding of sufficiently changed conditions (often called issuable facts) is essential before an amendatory zoning ordinance can be upheld. If the changes were such that reasonable men would differ as to whether the zoning amendment related to the health, safety, morals or general welfare of the public, then the rezoning must be upheld as a valid exercise of the city's police power. While the factual situation may appear to bear some semblance to spot zoning, we must look to the changed conditions to determine whether illegal and unjustified spot zoning has occurred.

The evidence in the record indicates that the area surrounding the 4.' acre tract was residential in 1960, and remained residential in 1972, the date of the passage of the amended zoning ordinance now under attack. Although the 4.1 acre tract has enjoyed a residential classification since 1960, no new homes have been built on the property. There were two houses located on the property in 1960 when the first comprehensive zoning ordinance was passed, but these were removed around 1963. The evidence plainly shows that within a one-half mile radius of the property there is only one shopping center and this facility is located in close proximity to the central business district to the north. The testimony illustrates that this entire southeast quadrant, the largest residential area in the city, has no convenient shopping area within the quadrant itself. Also there was testimony from two witnesses for the city that the 4.1 acre tract was not suitable for residential purposes because of its size, location, difficulties in excavation and problems with financing, all necessary in producing acceptable residential homes.

The most significant changes that have occurred between 1960 and 1972 are those involving the widening of Crockett Road. Crockett Road, as was stated earlier, is the most traveled artery through this southeast quadrant and for that matter the City of Palestine itself. In 1968 Crockett Road was widened from two lanes to four lanes, including a parking lane on each side of the road. Commercial-type street lights were also added. The curb and gutter along Crockett Road remained of a residential type but a commercial type of curb and gutter (multiple openings for ingress and egress) were placed adjacent to the 4.1 acre tract along Crockett Road. The widening of Crockett Road resulted in a

substantial increase in traffic.[2] Also there was testimony that traffic had substantially increased from 1963 to the present time of the trial. Crockett Road is more than just a street in a residential section of Palestine. It is, as has been stated, a highway, the main thoroughfare in this section of the city. The traffic which occurs on Crockett Road is unlike most normal residential traffic. It is of a variety that is seen on major highways, including commercial, business and industry traffic. This substantial increase in traffic we feel places this case in line with the case of Clesi v. Northwest Dallas Improvement Ass'n, 263 S.W.2d 820 (Tex.Civ.App., Dallas, 1953, writ ref'd n. r. e.). In *Clesi* the Dallas Court of Civil Appeals stated a tremendous increase in the volume of traffic could evidence, without more, such a change of conditions as to constitute a reasonable basis for the rezoning under attack. Primarily, because a major highway is involved in the instant case, an even stronger basis for a holding of sufficiently changed conditions than was evident in *Clesi* is presented. In the case of Goddard v. Stowers, 272 S.W. 2d 400 (Tex.Civ.App., Dallas, 1954, n. w. h.), property adjacent to a major thoroughfare was rezoned business from a prior residential classification and the rezoning was upheld. The Dallas Court indicated that the mere fact that commercial districts are located in comparatively short distances from the residential areas does not make the ordinance irrational or discriminatory, since the stores in such districts serve a "distinct and insistent commercial social need." The court also stated, citing McNutt Oil & Refining Co. v. Brooks, 244 S.W.2d 872 (Tex.Civ.App., El Paso, 1951, n. w. h.): "In changing zoning classification of territory after construction of main arterial highway, city council could properly consider not only welfare of

inhabitants of city, but convenience and welfare of traveling public using such highway." All of the factors present, in this court's opinion, show sufficiently changed conditions. These conditions thereby create a reasonable basis for the differentiation of the 4.1 acre tract from the surrounding area.

This court does not feel that the cases of Weaver v. Ham, supra, and Hunt v. City of San Antonio, supra, should be controlling. In these cases it is not shown by the facts stated therein that either of the cases deals with property situated along a major highway—a highway which is most heavily traveled in the city of San Antonio.

We feel that there was adequate evidence presented at the trial court to justify the City of Palestine in exercising its lawful discretion.

Although this ruling is based on sufficiently changed conditions, it is not unreasonable to believe that the city ordinance under attack could have been upheld even without the sufficiently changed conditions being present. Since the rezoning of the 4.1 acre tract had a reasonable relation to the general welfare of the community, i. e., to provide adequate shopping facilities for the residents of this southeast quadrant, the first requirement is thus met. Secondly, the rezoning of this property could be said to be reasonably related to an orderly plan of zoning development, i. e., the 1968 comprehensive zoning ordinance which was in effect at the time the zoning took place. We, however, do not make our ruling based upon this theory.

We cannot say as a matter of law that the rezoning of the 4.1 acre tract had no substantial relation to the health, safety, morals, or general welfare of the people of the City of Palestine. On the contrary

---

2. A traffic count was taken in 1967 and 1970. Counts were made approximately six blocks north of the area in question and approximately five to six blocks south of the area along Crockett Road. The results were as follows:

| | | |
|---|---|---|
| The north Crockett Road count—1967 | 8,090 |
| | 1970 | 11,330 |
| The south Crockett Road count—1967 | 4,010 |
| | 1970 | 6,200 |

there was presented at the trial court evidence of issuable facts which would allow the city to exercise its lawful legislative function. Appellants, therefore, have failed to meet their burden of proof that this amended zoning ordinance was illegal or unjustified spot zoning.

Appellants' two other points of error after having been duly considered are overruled. The judgment of the trial court is affirmed.

Judgment affirmed.

## ON MOTION FOR REHEARING

Appellants have attached an "appendix" to their motion for rehearing which is not a part of the record in this case and therefore may not be considered by this court. Nixon v. Royal Coach Inn of Houston, 464 S.W.2d 900 (Tex.Civ. App., Houston 14th Dist., 1971, n. w. h.).

After careful consideration of appellants' motion for rehearing, we remain convinced of the correctness of our original opinion. Therefore, the motion for rehearing is respectfully overruled.